## Attorney General *vs.* Leo A. McHatton, Jr.

Suffolk. January 8, 1999. - February 4, 1999.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Municipal Corporations,* City council. *Public Employment,* Police, Misconduct, Removal. *Words,* "Misconduct in office."

Where the phrase "misconduct in any elective or appointive public office, trust or employment" appears in § 9-6 of the Chelsea city charter and in G. L. c. 268A, § 25, that provision of the city charter will be interpreted and applied consistently with case law construing the statute and other similar provisions. [792-793]

Discussion of cases considering what conduct of a public official or employee constitutes "misconduct in . . . office" within the meaning of G. L. c. 268A, § 25. [793-794]

The conduct of a person, who, while serving as a police officer in Chelsea, was convicted of six felony counts of filing false Federal income tax returns and who was then removed from his position through the operation of G. L. c. 279, § 30, constituted "misconduct in . . . office" and disqualified him under § 9-6 of the Chelsea city charter from holding the position of city councillor in Chelsea. [794-796]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on December 12, 1997.

On transfer to the Superior Court Department, the case was heard by *Maria I. Lopez,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*LaDonna J. Hatton,* Assistant Attorney General (*Peter Sacks,* Assistant Attorney General, with her) for the Attorney General.

*John C. McBride* (*Arlene J. Fothergill* with him) for the defendant.

*John M. Collins* for Massachusetts Chiefs of Police Association, Inc., amicus curiae, submitted a brief.

Greaney, J. The issue in this case is whether felony convictions of the defendant, while he was a police officer in the city

of Chelsea, of Federal income tax evasion constitute "misconduct in office" under a provision of the Chelsea city charter thereby disqualifying him from holding the elective office of city councillor. We conclude that the defendant is barred from holding the office.

The background of the case is as follows. In 1975, or thereabouts, the defendant was appointed a police officer in Chelsea, and in the mid-1980's, he was promoted to the rank of captain and became commander of the vice squad.

On August 20, 1993, after a jury trial in the United States District Court for the District of Massachusetts, the defendant was convicted of six felony counts of filing false income tax returns.[1] The charges covered the tax years 1987 through 1992, and involved $51,314.36 in unreported income from electrician and snowplowing businesses conducted by the defendant. The parties stipulated that the defendant's failure to report this income resulted in a tax loss of $14,368.02 to the United States government. In addition, the sentencing judge found that the total tax loss from the defendant's filing false tax returns was approximately $43,103.95, a sum which reflected the judge's determination of additional unreported income for the tax years 1974 through 1985. (These years were not the subject of indictments.) The defendant was sentenced to a term of one year in prison, an additional year of supervised release, and he was ordered to pay a $10,000 fine. The defendant's sentence was upheld by the United States Court of Appeals for the First Circuit in an unpublished decision.

On December 15, 1993, the defendant was notified by the receiver of Chelsea that, because of his felony convictions and prison sentence, he had been removed from his office as a member of the Chelsea police force by operation of G. L. c. 279, § 30, which automatically removes from public office any person sentenced to prison for a felony.

In 1994, the voters in Chelsea approved a new city charter that replaced the receivership that had been overseeing the city with a city council and city manager form of government. Section 9-6 of the charter is entitled "Disqualification from Office," and provides, "Any individual who has been finally convicted of a criminal offense involving misconduct in any

---

[1]The jury acquitted the defendant of additional charges of racketeering and conspiracy.

elective or appointive public office, trust or employment at any time held by him shall not be eligible to serve in any other elective or appointive office or position under the city." The Legislature subsequently enacted the new charter, and it was signed into law by the Governor. See St. 1994, c. 103, § 1.

In May, 1997, the defendant obtained the necessary documents from the Chelsea city clerk to seek nomination as a candidate for city councillor from district 1. The defendant subsequently submitted sufficient signatures to qualify for the ballot. No registered voter of district 1 filed a challenge under G. L. c. 55B, § 7, to the defendant's candidacy, and in the election held on November 4, 1997, he received the greater number of votes for the office of district 1 city councillor.

The Chelsea city manager requested that the Attorney General bring an action in the nature of quo warranto under G. L. c. 249, § 9, to bar the defendant from taking office. The Attorney General filed an action under that statute in the Supreme Judicial Court for Suffolk County seeking a declaration that the defendant was ineligible to take office as a city councillor and an injunction preventing him from doing so. A single justice of this court transferred the case to the Superior Court under G. L. c. 211, § 4A. A preliminary injunction was thereafter entered in that court enjoining the defendant from taking office or serving as a city councillor. The parties then submitted a statement of agreed facts together with cross motions for summary judgment. A judge in the Superior Court granted the defendant's motion, denied the Attorney General's motion, and entered a judgment dismissing the action. The judgment has been stayed pending the Attorney General's appeal which we transferred to this court on our own motion.[2]

The phrase "misconduct in any elective or appointive public office, trust or employment" in § 9-6 of the Chelsea city charter also appears in G. L. c. 268A, § 25, the statute providing for the suspension of public officials and employees who engage in such misconduct. It should be presumed that the Legislature, in approving § 9-6 of the Chelsea city charter, intended that the phrase be interpreted and applied in a manner consistent with existing case law construing G. L. c. 268A, § 25, and similar provisions in related areas. See *Andover Sav. Bank* v. *Commis-*

---

[2]Pending resolution of the appeal, the incumbent district one councillor has continued to serve in that position in accordance with § 2(c) of the new Chelsea city charter.

*sioner of Revenue*, 387 Mass. 229, 240-241 (1982). With respect to § 25, the Appeals Court has recognized that, although "a crime arising from an employee's off-duty conduct is not generally considered misconduct in office . . . . [t]here are . . . circumstances where the crime charged, no matter where or when performed, is so inimical to the duties inherent in the employment that an indictment for that crime is for misconduct in office." *Dupree* v. *School Comm. of Boston*, 15 Mass. App. Ct. 535, 537 (1983). See *Perryman* v. *School Comm. of Boston*, 17 Mass. App. Ct. 346, 350-351 (1983) (indictment of two teachers for welfare fraud constituted "misconduct in office" because lying to, and stealing from, the public violated a teacher's position of special public trust). In construing the phrase "misconduct in office" appearing in G. L. c. 121B, § 6, governing removal of members of housing authorities, we have said that such misconduct includes the "intentional violation of a known and significant rule or duty inherent in the obligations of [the] office." *Bunte* v. *Mayor of Boston*, 361 Mass. 71, 76 (1972). In construing the phrase "misconduct . . . in their offices" appearing in the Massachusetts Constitution, Part II, c. 1, § 2, art. 8, concerning the impeachment of State officers, the Justices rejected the view that the phrase excluded acts of misconduct that were "in no way related to the office held or the duties of said office," *Opinion of the Justices*, 308 Mass. 619, 621 (1941), and they went on to state that the phrase encompassed misconduct that "can be said reasonably to render [the officer] unfit to continue to hold [his] office." *Id.* at 627.

There is case law pointing out that police officers voluntarily undertake to adhere to a higher standard of conduct than that imposed on ordinary citizens. Citing four previous decisions of this court,[3] as "but a sample" of the law on the obligations of police officers, the Appeals Court has said:

"These cases teach a simple lesson. Police officers must comport themselves in accordance with the laws that they are sworn to enforce *and* behave in a manner that brings honor and respect for rather than public distrust of law

[3]The decisions referred to were *Broderick* v. *Police Comm'r of Boston*, 368 Mass. 33, 41-43 (1975), cert. denied, 423 U.S. 1048 (1976); *Huntoon* v. *Quincy*, 349 Mass. 9, 14 (1965); *Mayor of Newton* v. *Civil Serv. Comm'n*, 333 Mass. 340, 343 (1955); *Mayor of Medford* v. *First Dist. Court of E. Middlesex*, 249 Mass. 465, 470 (1924).

enforcement personnel. They are required to do more than refrain from indictable conduct. Police officers are not drafted into public service; rather, they compete for their positions. In accepting employment by the public, they implicitly agree that they will not engage in conduct which calls into question their ability and fitness to perform their official responsibilities."

*Police Comm'r of Boston* v. *Civil Serv. Comm'n*, 22 Mass. App. Ct. 364, 371 (1986). Consistent with these observations, the Appeals Court has upheld the discharge of police officers who behaved inappropriately while off duty. See *Police Comm'r of Boston* v. *Civil Serv. Comm'n*, 39 Mass. App. Ct. 594, 601 (1996) (officer lost his firearm while intoxicated and verbally abused other officers); *McIsaac* v. *Civil Serv. Comm'n*, 38 Mass. App. Ct. 473, 475, 476 (1995) (officer negligently handled firearm while intoxicated and verbally abused other officers). See also *Commissioners of Civil Serv.* v. *Municipal Court of the Brighton Dist.*, 369 Mass. 166, 170-171 (1975), cert. denied sub nom. *Patuto* v. *Commissioners of Civil Serv.*, 429 U.S. 845 (1976) (upholding discharge of off-duty police officer who accompanied others while they uttered forged money orders). We note as well that the Legislature has recognized the need for a high standard of conduct for police officers in G. L. c. 41, § 96A, which prohibits the appointment of anyone who has been convicted of a felony as a police officer of a city, town, or district, and G. L. c. 22C, § 14, which imposes a similar prohibition on appointments to the State police.

We conclude that the defendant's conduct constituted misconduct in office which bars him under § 9-6 of the Chelsea city charter from holding the position of city councillor. His six convictions for Federal income tax evasion constituted convictions of serious felonies involving "lying to and stealing from the public." *Perryman* v. *School Comm. of Boston*, *supra* at 351. These convictions required his termination under G. L. c. 279, § 30, from the position of rank and responsibility held by him in the Chelsea police department. Had he committed the offenses prior to his appointment, he would have been disqualified from being appointed a police officer at either the State or local level.

The defendant's criminal dishonesty also violated the oath he took when he became a police officer to uphold the laws of the

United States, as well as regulations of the Chelsea police department establishing a "Law Enforcement Code of Ethics." Provisions of the latter called on a police officer to "keep [his] private life unsullied as an example to all"; to "recognize the badge of [his] office as a symbol of public faith and . . . accept it as a public trust"; to be "[h]onest in thought and deed . . . both [in] personal and official life"; and to be "exemplary in obeying the laws of the land."[4] The United States District Court judge who sentenced the defendant recognized that the defendant had committed a serious violation of his sworn obligations to obey and uphold the law. The judge, as part of the sentencing proceedings, admonished the defendant for his crimes in these terms: "[Y]ou, of all people, as a senior law enforcement officer, had a duty to obey to the letter all of the laws you swore to uphold. You abused that duty and your office. . . . Any time you as a senior police officer knowingly violate a public law, you compromise your ability to enforce the law fully and you make yourself a target for blackmail. . . . When you or any other senior officer in a police force violates the law, you abuse a position of public and private trust; and your conviction for violating the tax laws unfairly taints the reputation of every honest police officer in Chelsea."

In reaching our conclusion, we have considered and rejected the defendant's arguments that the misconduct is not significant enough to render him unfit to hold the office of city councillor.[5] The case does not involve a minor offense. It involves dishonest and felonious conduct knowingly committed by the defendant, over a period of at least six years, amounting, in effect, to a theft of a substantial amount of money from the government.

The judgment is vacated. A new judgment is to enter (a) declaring that the defendant's criminal convictions and sentenc-

---

[4]As a corollary to the conclusion that police officers can be disciplined for serious off-duty conduct, we have acknowledged that police are subject to the rules and regulations of their department when off duty. See *Broderick* v. *Police Comm'r of Boston*, 368 Mass. 33, 34 n.1 (1975).

[5]We discern nothing in *Tobin* v. *Sheriff of Suffolk County*, 377 Mass. 212 (1979), that calls for a different conclusion. In particular, the dictum, *id.* at 213 n.3 (stating that, "[b]ecause the plaintiff [an Appeals Court chief deputy sheriff] was not indicted 'for misconduct in [his public] office or employment,' the sheriff did not have the power to suspend him under G. L. c. 268A, § 25"), has no application to this case where serious off-duty behavior constitutes misconduct in office based on the case law and other considerations we have discussed.

ing are for misconduct which, under § 9-6 of the Chelsea city charter, renders him ineligible to serve in an elective or appointive office or position in or under the Chelsea city government; and (b) enjoining him from taking office or serving as the city councillor for district one.

*So ordered.*