Kaplan, Mitchell H., J.
Plaintiff Public Employee Retirement Administration Commission (“Commission”) filed this action pursuant to G.L.c. 249, §4 seeking review of a decision of the Peabody District Court (“District Court”). That decision reversed the Commission’s prior finding that defendant Edward Bettencourt (“Bettencourt”) must forfeit his retirement benefits under G.L.c. 32, §15(4) as a result of a criminal conviction. This case is now before the court on the Commission’s Motion for Judgment on the Pleadings and Bettencourt’s Cross Motion for Judgment on the Pleadings. For the reasons set forth below, the Commission’s Motion for Judgment on the Pleadings is DENIED, Bettencourt’s Cross Motion for Judgment on the Pleadings is ALLOWED, and the District Court’s decision AFFIRMED.
BACKGROUND
Bettencourt was appointed to the Peabody Police Department (“Department”) in October 1980. He became a member of the Peabody Retirement System on November 7, 1982. Bettencourt was promoted to the rank of Sergeant in 1990, and then promoted to the position of Lieutenant in 2003.
On December 25, 2004, while on duty as Watch Commander, Bettencourt used an office computer to access the Massachusetts Human Resources Division Applicant Record Information site (“the site”)[2] in order to view the civil service examination scores of twenty-one police officers.[3] To access the examination scores of these officers, Bettencourt needed each officer’s Social Security number and date of birth.[4] In addition, access to the examination scores required Bettencourt to create an account and password for each officer.
On October 26, 2006, Bettencourt was indicted by a Suffolk County Grand Jury on twenty-one counts of violating G.L.c. 266, §120F, which prohibits unauthorized access to a computer system.[5] The Department suspended Bettencourt on November 2, 2006. On April 4, 2008, following a juiy-waived trial in Suffolk Superior Court (Hinkle, J.), Bettencourt was convicted on all twenty-one counts. He was sentenced to pay a fine of $500.00 for each violation of G.L.c. 266, §120F — $10,500.00 in the aggregate.
On April 4, 2008, Bettencourt filed an application for Voluntary Superannuation Retirement with the Peabody Board of Retirement (“Board”). Because of his convictions, the Board notified Bettencourt that a hearing would be held on May 23,2008 to determine whether he was eligible to receive retirement benefits. Pursuant to G.L.c. 32, §15(4), a member of a city retirement system (as well as many other similar contributory systems) forfeits his pension upon conviction of a criminal offense involving a “violation of the laws applicable to his office or position.” In its Findings and Decision dated July 23, 2008, the Board found that Bettencourt had not violated laws applicable to his position as a Peabody police officer and his application for Superannuation Retirement allowance should be processed, subject to the Commission’s approval. By letter dated September 10, 2008, the Commission reversed the Board’s decision. It held that the crimes of which Bettencourt had been convicted “related to his office or position” and, therefore, pursuant to G.L.c. 32, §15(4), he was “only entitled to a return of his contributions to the retirement system, without interest.”
Bettencourt appealed the Commission’s decision to the District Court. In a memorandum and order on cross motions for summary judgment dated June 15, 2009, the District Court reversed the Commission’s decision. The District Court found that “the factual circumstances of Bettencourt’s criminal activity do not establish a direct link to his position as a police officer, .. . [as] there was no perceptible focus in what he did on his official capacity as a police officer.”
DISCUSSION
General Laws c. 249, §4 provides for judicial review in the nature of certiorari to correct errors of law in administrative proceedings where judicial review is otherwise unavailable. Bulger v. State Bd. of Ret., 446 Mass. 169, 173 (2006). On certiorari review a court only corrects a “substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff... In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public.” Massa *300 chusetts Bay Transp. Auth. v. Auditor of the Commonwealth; 430 Mass. 783, 790 (2000), quoting Carney v. Springfield, 403 Mass. 604, 605 (1988).
In pertinent part, G.L.c. 32, §15(4) provides:
[i]n no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position; be entitled to receive a retirement allowance ... The said member or his beneficiary shall receive, unless otherwise prohibited by law, a return of his accumulated total deductions; provided, however, that the rate of regular interest for the purposes of calculating accumulated total deductions shall be zero.
G.L.c. 32, §15(4) is considered a penal statute for purposes of statutory construction. Gaffney v. Contributory Ret. Appeal Bd., 423 Mass. 1, 3 n.3 (1996). Its language, therefore, must be construed narrowly and should not be stretched to accomplish an unexpressed result. Bulger, 446 Mass. at 174-75. In enacting G.L.c. 32, §15(4) the Legislature intended “to avoid having the precise form of the criminal enforcement action make a difference with respect to [pension forfeiture].” Gaffney, 423 Mass. at 4. Rather, “[t]he substantive touchstone intended by the [Legislature in enacting §15(4)] is criminal activity connected with the [member’s] office or position.” Id. There is no requirement that the crime itself involve some violation of a law applicable to the employee’s specific public office or employment; however, the criminal offense must be “related to the member’s official capacity." Id. at 3-4. “Looking to the facts of each case for a direct link between the criminal offense and the member’s office or position best effectuates the legislative intent of §15(4).” Bulger, 446 Mass. at 175.
In Bulger, a Boston Juvenile Court clerk-magistrate pled guilty to perjury and obstruction of justice for providing false testimony to a federal grand jury investigating his brother, and the State Retirement Board subsequently found that his retirement allowance must be forfeited under G.L.c. 32, §15(4). Id. at 171-72. A judge in the Boston Municipal Court reinstated Bulger’s retirement allowance, ruling that his convictions did not constitute “violations of the laws applicable his office or position.” Id. The State Retirement Board filed a petition for review in the Supreme Judicial Court for Suffolk County and a single justice reported the matter to the full court. Before the SJC, Bulger argued that because his convictions arose out of a personal matter, G.L.c. 32, §15(4) was inapplicable. Id. at 178-79. The SJC disagreed. It undertook an extensive analysis of the laws applicable to the position of clerk-magistrate, noting, in particular, that the Code of Professional Conduct for Clerks of Court, Rule 3:12 imposes upon clerk-magistrates significant responsibility for upholding the integrity of the judicial system, promoting public confidence in the administration of justice, avoiding the appearance of any impropriety in their activities and promoting public confidence in the courts. Id. at 176-78. In holding that Bulger had violated laws applicable to his office/position, the SJC reasoned that:
At the heart of a clerk-magistrate’s role is the unwavering obligation to tell the truth, to ensure that others do the same through the giving of oaths to complainants, and to promote the administration of justice. When Bulger committed the crimes of perjury and obstruction of justice, he violated the fundamental tenets of the code and of his oath of office, notwithstanding his contention that such misconduct occurred in the context of what was arguably a personal matter . . . The nature of Bulger’s particular crimes cannot be separated from the nature of his particular office when what is at stake is the integrity of our judicial system.
Id. at 179-80.
Bulger teaches that there are no fixed standards or rules for deciding when there is a “direct link” between a criminal conviction and a member’s office or position. Rather, whether that link exists can only be determined by careful consideration of the elements of the crime and the nature of the member’s job. In the instant case, the Commission argues that because, as a police officer, Bettencourt took an oath to protect people and property and to uphold the Commonwealth’s laws, his convictions for violating G.L.c. 266, §120F cannot be separated from his position as a Lieutenant in the Peabody police force. In effect, the Commission argues that because a police officer’s job requires him to enforce the law, any criminal conviction is inextricably “linked” to his position and therefore requires forfeiture of his pension. This court finds that the Commission’s argument sweeps far too broadly.[6]
Although accessing a computer system without authorization is certainly a serious offense, albeit a misdemeanor, the court does not find that it places at risk the integrity of the Peabody Police Department. When Bettencourt viewed the civil service scores of his colleagues on December 25, 2004, he exhibited a very substantial failure of good judgment and lack of respect for his colleagues’ personal information. In some sense, therefore, this conduct could also be said to show a lack of respect for the law, as would any conduct that violated a law, but it certainly did not violate a “fundamental tenet” of his job as a police officer. While the criminal conduct occurred while Bettencourt was on duly, it was not enabled by the official services that he was then performing. See notes 2 and 4, supra. Rather, the fact that Bettencourt was on duly was incidental to the conduct at issue. In sum, accessing the computer system was not inherently in conflict with the role of a police officer as it is generally perceived by the public. There is no evidence that Bettencourt sought personal gain (a point discussed further below) through his unlawful conduct or to advantage or disadvantage anyone else. His actions *301 did not show a lack of concern for public safety or property, and they did not hinder any other officer in the performance of his or her duties, for example by hindering an investigation. Unless this court were to find that any criminal conviction of a police officer requires pension forfeiture, which would appear to be inconsistent with legislative intent, Bettencourt’s criminal conviction ought not result in the loss of his pension.[7]
Finally, while a crime clearly need not have been committed for personal advantage to cause pension forfeiture, it should be noted that Bettencourt’s conviction did not involve dishonesty for personal gain. Compare Gaffney, 423 Mass. at 1, 6 (retirement allowance forfeited based on convictions for five counts of larceny over $250 from the defendant’s department and one count of larceny by a common scheme to steal money and property from town), and Maher, 67 Mass.App.Ct. at 613-17 (forfeiture upheld where the chief plumbing and gas inspector for the city of Quincy broke into the city’s personnel office to review his file and stole documents critical of his work to improve his chances of being re-appointed by the newly elected mayor). In fact, there is no evidence that Bettencourt either altered or retained the civil service examinations scores he viewed, or took any other action based on what he had learned. While his reason for accessing the examination scores is unresolved in the record, the evidence does not suggest that he was attempting to further his career. During Bettencourt’s sentencing, Judge Hinkle commented that “based on the trial evidence that there was [no] evidence of any gain to the defendant other than the issue of curiosity.”
Because, as noted above, G.L.c. 32, §15(4) is apenal statute and must be narrowly construed, pension forfeiture will follow conviction of a crime only when the crime is directly linked to the member’s office or position. In the present case, the only link is that Bettencourt was a police officer who committed a crime. That is insufficient.
ORDER
For the above-mentioned reasons, it is hereby ORDERED that the Public Employee Retirement Administration Commission’s Motion for Judgment on the Pleadings is DENIED and Edward Bettencourt’s Cross Motion for Judgment on the Pleadings is ALLOWED. Final judgment shall enter affirming the Peabody District Court’s Decision.

 There is no evidence in the record from which it can be determined if this web site can only be accessed using a computer connected to the Division’s database or any computer with internet access.

 Twenty of the police officers were members of the Department. The other police officer was a member of the Salem Police Department.

 There is also no evidence in the record explaining how Bettencourt obtained the officers’ Social Security numbers and birth dates. The parties, however, agree that Bettencourt was never charged with any crime relating to the manner in which he acquired this personal information.

 General Laws c. 266, §120F states:
Whoever, without authorization, knowingly accesses a computer system by any means, or after gaining access to a computer system by any means knows that such access is not authorized and fails to terminate such access, shall be punished by imprisonment in the house of correction for not more than thirty days or by a fine of not more than one thousand dollars, or both.
The requirement of a password or other authentication to gain access shall constitute notice that access is limited to authorized users.

 Compare, Bulger, 446 Mass. at 179 (“Depending on the misconduct at issue, there may be instances when removal . . . from office is mandated . . . because it serves the public good, but pension benefits are not concomitantly terminated because the misconduct at issue does not fall within the purview of G.L.c. 32, §15”).

 In Gaffney, the Supreme Judicial Court found that “the General Court did not intend pension forfeiture to follow as a sequelae of any and all criminal convictions. Only those violations related to the member’s official capacity were targeted.” 423 Mass. 1, 5.