NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1158                                          Appeals Court

ESSEX REGIONAL RETIREMENT BOARD  vs.  JUSTICES OF THE SALEM
DIVISION OF THE DISTRICT COURT DEPARTMENT OF THE TRIAL COURT[1]
& another.[2]


No. 16-P-1158.

Essex.      March 8, 2017. - July 12, 2017.

Present:  Grainger, Blake, & Neyman, JJ.[3]


Public Employment, Retirement, Forfeiture of pension.  Police,
     Retirement.  Pension.  Constitutional Law, Public
     employment, Excessive fines clause.  County, Retirement
     board.  Practice, Civil, Action in nature of certiorari.
     District Court, Appeal to Superior Court.



Civil action commenced in the Superior Court Department on
July 14, 2015.

The case was heard by James F. Lang, J., on motions for
judgment on the pleadings.


Michael Sacco for the plaintiff.
Thomas C. Fallon for John Swallow.


------------------------

[1] As nominal parties.

[2] John Swallow.

[3] Justice Grainger participated in the deliberation on this
case and authored this opinion prior to his retirement.

GRAINGER, J.  The plaintiff, Essex Regional Retirement Board (board), appeals from a judgment allowing a motion for judgment on the pleadings in favor of defendant John Swallow. The board determined that Swallow's convictions of various criminal offenses committed in October, 2012, while on administrative leave, render him ineligible to receive a retirement allowance pursuant to G. L. c. 32, § 15(4).  We agree, and conclude that Swallow's convictions fall within the purview of § 15(4).  We remand the case for consideration of the constitutionality of the assessed penalty under the Eighth Amendment to the United States Constitution.

Background.  We summarize the procedural history and the underlying relevant facts which are undisputed.  In June, 2012, Swallow was placed on administrative leave from his duties as a sergeant in the Manchester police department.  At that time he was also suspended from a second job he held as a paramedic with Northeast Regional Ambulance Service.  Although Swallow left his badge and his service handgun at the police station, his license to carry a firearm was not suspended at that point.  After being placed on administrative leave, Swallow experienced significant depression and began drinking heavily on a daily basis.

On the afternoon of October 26, 2012, Swallow was at home with his wife, Lauren Noonan.  He was drinking heavily and the

couple began arguing, initially because Noonan was concerned that Swallow might drive his car. The quarrel escalated; Noonan went to her bedroom and sat on the bed with one of her dogs. Swallow then entered the room with a .45 caliber handgun, and grabbed Noonan by the shirt. He began screaming at her, and waved the gun in her face. He then pointed the gun at the dog and threatened to kill it. Noonan stood up, pushed past Swallow and left the house, walking to her next door neighbors' house. While in the neighbors' driveway, she heard a gunshot and telephoned the police from the neighbors' house.

Swallow apparently had fired the gun into a door, then put the gun down, walked outside, and sat on the front steps of the house. The Beverly police arrived in response to Noonan's summons and placed Swallow under arrest. The police recovered the fired bullet in the upstairs bedroom. A search of the house revealed numerous guns and other weapons in the bedroom.[4]

As a result of this incident, Swallow admitted to sufficient facts on the following charges: (1) assault and battery, in violation of G. L. c. 265, § 13A(a), (2) discharge of a firearm within 500 feet of a building, in violation of G. L. c. 269, § 12E, (3) assault by means of a dangerous weapon, in

---

[4] In the basement, the officers observed hundreds of rifles and thousands of rounds of ammunition. Most of these apparently belonged to a friend of Swallow's who was deployed in Afghanistan.

violation of G. L. c. 265, § 15B(b), (4) three counts of improper storage of a firearm, in violation of G. L. c. 140, § 131L(a) and (b), and (5) intimidation of a witness, in violation of G. L. c. 268, § 13B.

The board determined that Swallow's criminal convictions were violations of laws applicable to the office or position of a police officer as defined in G. L. c. 32, § 15(4), thus requiring forfeiture of his pension. Swallow appealed the board's decision to the District Court; on cross motions for judgment on the pleadings, the District Court judge reversed the board's decision, finding that there was "no evidence of any direct link" between Swallow's criminal convictions and his employment. The board's petition to the Superior Court was certified pursuant to G. L. c. 249, § 4. A judge of the Superior Court affirmed the District Court judge's decision, finding that the narrow scope of § 15(4) did not require pension forfeiture on this record. The board timely appealed.

Discussion. In our review, we are limited to a determination whether the board's decision was unsupported by substantial evidence or was an error of law that either resulted in manifest injustice to Swallow or would have adversely affected real interests of the general public. See Garney v. Massachusetts Teachers' Retirement Sys., 469 Mass. 384, 388 (2014); Scully v. Retirement Bd. of Beverly, 80 Mass. App. Ct.

538, 542 (2011) ("Certiorari allows a court to correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the [party appealing]" [quotation omitted]).

1. Pension forfeiture. We turn to the statutory basis of the board's decision. Section 15(4) requires "any member after final conviction of a criminal offense involving violation of . . . laws applicable to his office or position" to forfeit his pension (emphasis supplied). G. L. c. 32, § 15(4), inserted by St. 1987, c. 697, § 47. The analysis is necessarily fact specific. See Garney, supra at 385.

"The nexus required by G. L. c. 32, § 15(4), is not that the crime was committed while the member was working, or in a place of work, but only that the criminal behavior be connected with the member's position." Durkin v. Boston Retirement Bd., 83 Mass. App. Ct. 116, 119 (2013). It is clear that § 15(4) "did not intend pension forfeiture to follow as a sequelae of any and all criminal convictions." Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 5 (1996).

When public employees commit criminal acts unrelated to the duties of their position and unconnected to the use of information or property gained through their employment, our courts have found no "direct factual link" between their position and the criminal behavior. Garney, supra at 389. In

Retirement Bd. of Maynard v. Tyler, 83 Mass. App. Ct. 109 (2013), we determined that the narrow scope of § 15(4) precluded pension forfeiture for a fire fighter who "had, for a number of years, been sexually abusing young boys." Id. at 109. Although we recognized "the essential role firefighters play, extinguishing fires and protecting life and property," we concluded that the crimes were "personal in nature, occurring outside the firehouse while [the fire fighter] was not on duty." Id. at 112-113.

Similarly, in Herrick v. Essex Regional Retirement Bd., 77 Mass. App. Ct. 645, 654 (2010), we determined that although the employee, a custodian for a public housing authority, sexually assaulted his daughter, he was entitled to his pension as the offense was not "connected with [the employee]'s official capacity[;] . . . it was not committed upon anyone who was employed by or who resided at the public property, [and it did not] occur [on the public property]." See Garney, supra at 384 (pension forfeiture unwarranted "where a teacher has engaged in criminal activity that endangers children generally, but does not involve the students whom he taught, the school district for which he worked, or the use of his status as a teacher"); Scully, 80 Mass. App. Ct. at 543-544 (no direct link between library position and possession of child pornography).

On the other hand, our courts have found a direct link when public employees committed arguably less egregious crimes, but acted in a manner contrary to ethics and values central to their position.[5]  In State Bd. of Retirement v. Bulger, 446 Mass. 169, 179-180 (2006), the Supreme Judicial Court concluded that a clerk-magistrate of the Juvenile Court forfeited his pension when he was convicted of two counts of perjury and two counts of obstruction of justice.[6]  The court emphasized that "[a]t the heart of a clerk-magistrate's role is the unwavering obligation to tell the truth, to ensure that others do the same through the giving of oaths to complainants, and to promote the administration of justice."  Id. at 179.  Because the employee "violated the fundamental tenets of the [Code of Professional Responsibility for Clerks of the Courts, S.J.C. Rule 3:12, as amended, 427 Mass. 1322 (1998),] and of his oath of office, notwithstanding his contention that such misconduct occurred in the context of what was arguably a personal matter," § 15(4) required that he forfeit his pension.  Bulger, supra at 179.

---

[5] Most recently, in State Bd. of Retirement v. Finneran, 476 Mass. 714, 721 (2017), the Supreme Judicial Court categorized these cases as having "direct legal links," reasoning that the crime committed directly implicated a statute that was specifically applicable to the employee's position.

[6] These charges stemmed from the employee's testimony in a grand jury investigation of his brother.  Bulger, supra at 171.

The court decided similarly in <u>Retirement Bd. of Somerville</u> v. <u>Buonomo</u>, 467 Mass. 662, 663-664 (2014), where it required a register of probate to forfeit his pension after being convicted of numerous counts of breaking into a depository (i.e., a cash vending machine), larceny, and embezzlement.  The court reasoned that the behavior of one holding the office must comport with the Code of Professional Responsibility for Clerks of the Courts, which requires registers to comply with the laws of the Commonwealth.  <u>Id</u>. at 671.  The employee's "commission of such criminal offenses, which was facilitated by his access and proximity to the cash vending machines, compromised the integrity of and public trust in the office of register of probate."  <u>Ibid</u>.

Turning to the facts of our case, we first acknowledge the special position that police officers hold.

> "Police officers must comport themselves in accordance with the laws that they are sworn to enforce <u>and</u> behave in a manner that brings honor and respect for rather than public distrust of law enforcement personnel.  They are required to do more than refrain from indictable conduct. . . .  In accepting employment by the public, they implicitly agree that they will not engage in conduct which calls into question their ability and fitness to perform their official responsibilities."

<u>Attorney Gen</u>. v. <u>McHatton</u>, 428 Mass. 790, 793-794 (1999) (quotation omitted).  "This applies to off-duty as well as on-duty officers."  <u>Falmouth</u> v. <u>Civil Serv. Commn</u>., 61 Mass. App. Ct. 796, 801 (2004).

We further recognized this principle in Durkin, 83 Mass. App. Ct. at 118-119, where we affirmed pension forfeiture imposed on an off-duty police officer who used his service weapon to shoot a fellow police officer after a night of drinking. "[P]olice officers, who are extensively trained in the use of firearms, and who carry their service revolvers with them while off-duty, have a high degree of responsibility to which the public deserves and demands adherence." Ibid. (footnote omitted). The police officer "engaged in the very type of criminal behavior he was required by law to prevent. Th[e] violation was directly related to his position as a police officer as it demonstrated a violation of the public's trust as well as a repudiation of his official duties." Id. at 119.

In the present case, Swallow threatened his wife with a handgun, waving and pointing the gun at her, without any justification. Although the incident occurred at home in the context of a personal matter, we find Swallow's behavior contrary to the fundamental tenets of the role of a police officer. See ibid. ("[A]t the heart of a police officer's role is the unwavering obligation to protect life"). Swallow's use of a gun, despite its not being his service firearm, to threaten another's life directly violated the public's trust and was a repudiation of his official duties. We therefore conclude that

the board's decision was supported by substantial evidence and was not an error of law.

2. Excessive fine. We turn to the argument that forfeiture of Swallow's pension would violate the excessive fines clause of the Eighth Amendment. See, e.g., Public Employee Retirement Admin. Commn. v. Bettencourt, 474 Mass. 60, 77 (2016).

The board determined that "Swallow [is] entitled to a return of his accumulated total deductions, less any accrued interest." However, the record before us is parsimonious with respect to the value of Swallow's retirement allowance[7] and what portion of that constituted deductions from Swallow's salary.

"[A] forfeiture can be excessive 'if it is grossly disproportional to the gravity of a defendant's offense.' . . . [The factors to determine proportionality] include the gravity of the offense, the maximum penalties, whether the violation was related to any other illegal activities, and the harm resulting from the crime." MacLean v. State Bd. of Retirement, 432 Mass. 339, 346 (2000), quoting from United States v. Bajakajian, 524 U.S. 321, 334 (1998). Swallow bears the burden of proving his pension forfeiture is excessive. Bettencourt, supra at 72. The excessiveness determination may be guided by MacLean, supra at

_____

[7] The District Court judge's decision states that Swallow's retirement allowance totals $1.6 million. The judge does not state the basis of that determination.

345-350 (forfeiture of pension totaling approximately $625,000 was not excessive for State employee who pleaded guilty to two misdemeanor violations of G. L. c. 268A, § 7, conflict of interest statute, where employee gained $512,000 through his illegal actions); Maher v. Retirement Bd. of Quincy, 452 Mass. 517, 523-525 (2008) (forfeiture of pension totaling $576,000 not grossly disproportional to employee's convictions of breaking and entering into building in daytime with intent to commit felony, see G. L. c. 266, § 18, stealing in building, see G. L. c. 266, § 20, and wanton destruction of property, see G. L. c. 266, § 127); Bettencourt, supra at 72-75 (forfeiture of $659,000 not proportional, hence constitutionally excessive, as penalty for unauthorized use of State computer system and invasion of privacy); and State Bd. of Retirement v. Finneran, 476 Mass. 714, 723-724 (2017) (forfeiture of $433,400 not excessive fine after employee committed felony connected to violation of Federal law carrying maximum penalty that includes ten years' imprisonment and $250,000 fine).

We remand for a finding of the specific amount forfeited by Swallow and a determination whether that amount is constitutionally excessive.

Conclusion. This case illustrates the difficulty inherent in applying the test enunciated by G. L. c. 32, § 15(4). Some of the illustrative fact patterns cited above are reasonably

clear (e.g., the disconnect between the duties of a fire fighter and charges of child abuse in Scully, contrasted with the evident correlation between perjury and obstruction of justice to the duties of a clerk-magistrate in Bulger). But in many instances, and especially those involving police officers whose duties involve enforcement of every law on our books, see McHatton, 428 Mass. at 793-794, there is no logical distinction between various areas of misconduct. The diverse arguments that may be employed either to distinguish or apply the facts of Durkin to this case amply demonstrate the problem.

This difficulty is exacerbated by applying a de facto criminal penalty to the contractual nature of pension plans, partly funded by the putative defendant. The simple enactment of statutory fines for criminal conduct, without reference to a defendant's employment, would provide a straightforward and time-tested mechanism to arrive at the same result. It would also remove the need for case-by-case determination of the constitutionality of a forfeiture amount that is the result of employment history and past compensation levels, rather than fittingly based on the degree of misconduct.

The judgment is reversed, and a new judgment shall enter in the Superior Court reversing the judgment of the District Court and remanding the case to the District Court for further proceedings consistent with this opinion.

<u>So ordered</u>.