MICHAEL P. CARNEY *vs.* CITY OF SPRINGFIELD & others [1]

Hampden.  September 14, 1988. — December 19, 1988.

Present: WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Administrative Law*, Exhaustion of remedies. *Civil Service*, Termination of employment, Judicial review. *Constitutional Law*, Public employment, Self-incrimination. *Public Employment*, Police, Termination. *Witness*, Immunity. *Police*, Discharge.

Statement of the standard of review applicable to a civil action for relief in the nature of certiorari. [605]

A city police officer, who had been called for questioning in a departmental investigation regarding his fitness to perform his duties, could not lawfully be discharged for invoking his Federal constitutional privilege against self-incrimination where, in a proceeding for judicial review of the officer's discharge, the record did not demonstrate that he had been advised of the precise consequences of his invoking the privilege but, instead, indicated merely that he had been given a general warning by a deputy chief of police that failure to answer the questions put to him might subject him to unspecified "departmental disciplinary proceedings." [608-610]

On appeal from summary judgment in an action for relief in the nature of certiorari commenced by a city police officer who had been discharged for invoking his State constitutional privilege against self-incrimination during an internal departmental investigation, this court concluded that a decision of the Civil Service Commission upholding the discharge could not stand, where the record did not demonstrate that the officer had been accorded transactional immunity with respect to the answers sought from him. [610-611]

CIVIL ACTION commenced in the Superior Court Department on April 17, 1986.

The case was heard by *John F. Murphy, Jr.*, J., on a motion for summary judgment.

[1] Civil Service Commission; the Springfield Division of the District Court Department is named as a nominal party.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

The case was submitted on briefs.

*Kevin B. Coyle* for the plaintiff.

*Richard T. Egan*, City Solicitor, for the city of Springfield.

*James M. Shannon*, Attorney General, & *Lisa A. Levy*, Assistant Attorney General, for Civil Service Commission.

NOLAN, J. The plaintiff, Michael P. Carney, appeals from a Superior Court judgment entered following allowance of a motion for summary judgment filed by the city of Springfield. The test whether a motion for summary judgment should be allowed is twofold: (1) whether after consideration of the pleadings, depositions, answers to interrogatories, and affidavits, a genuine issue of material fact exists; and (2) whether the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The Superior Court judge, in this action in the nature of certiorari, as provided by G. L. c. 249, § 4 (1986 ed.), affirmed a District Court judge's decision. The judgment in the District Court upheld the Civil Service Commission's approval of the board of police commissioners' successive votes to suspend Carney on two occasions and then to discharge him from the Springfield police department. Carney appealed. We transferred the case to this court on our own motion. We now reverse.

1. *Standard of review.* An action under G. L. c. 249, § 4, lies only where the petitioner has exhausted all administrative remedies. *Reidy* v. *Acting Director of Civil Serv.*, 354 Mass. 760 (1968). A court will correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff. *Murray* v. *Second Dist. Court of E. Middlesex*, 389 Mass. 508, 511 (1983). In its review, the court may rectify only those errors of law "which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public." *Id.* Our review, then, is to determine whether the Superior Court correctly determined that the record before the District Court showed no error of law in the commission's decision which adversely affected one of Carney's material rights. *Id.*

2. *The facts.* In June of 1984, the police department began investigating alleged violations of narcotics laws by members of the department.[2] Several officers were ordered to report to the department's Internal Investigation Unit (I.I.U.) regarding their fitness to perform their duties as police officers. Three department officers sought to enjoin the department from compelling them to report.[3] The Superior Court issued a declaration of rights but denied the officers' request for injunctive relief.[4]

On August 8, 1984, Carney was ordered to report to the I.I.U. for questioning regarding his fitness to perform his official duties. The order made clear that the questioning concerned an ongoing criminal investigation which would "continue until the termination, by trial or otherwise, of such indictments as are presently pending." Carney was provided with a set of detailed questions addressing the purchase, sale, and use of controlled substances by certain Springfield police officers.

Deputy Chief of Police Robert Flanagan read Carney the Miranda warnings, including a warning that anything he said could be used against him in court. Carney refused to waive his right to remain silent, claiming rights under the Massachusetts and United States Constitutions. Flanagan then "acknowledged" that Carney had not waived his right to remain silent but ordered Carney to respond under threat of "departmental disciplinary proceedings." Carney twice indicated that he did not understand and asked Flanagan for clarification regarding the type of "proceedings" to which he would be subject. Flanagan merely repeated that he would be subject to departmental discipline. When Flanagan asked Carney for the third time if he understood, Carney responded, "Yes I do, whatever they

---

[2] The record reflects that department officials were pursuing both a criminal investigation and an administrative investigation simultaneously.

[3] See *Doe* v. *Springfield*, post 1010. Officer Carney was not a party to that action.

[4] See *Springfield* v. *Civil Serv. Comm'n*, post 612. One of those officers, John Lynch, was ordered to report for questioning, refused, and was suspended for five days. He was again ordered to report, again refused to do so, and again was suspended for five days. Subsequently, he was discharged from his position.

might be. I don't know." Carney's attorney then objected to the questioning. Carney again asserted all the constitutional rights he might have, and refused to answer the questions. The interrogation concluded shortly thereafter.

The chief of police, Paul Fenton, suspended Carney that same day for refusing to answer the questions. Although Carney appealed his suspension and received a hearing on August 13, 1984, the appointing authority, the board of police commissioners, upheld it. He appealed.

Carney was again ordered to report to the I.I.U. for questioning. He appeared on August 16, 1984, was again given Miranda warnings, and told that anything he said could be used against him in court. Carney again declined to waive his constitutional rights but stated that he would answer some questions. Flanagan, the questioning officer, then acknowledged Carney's refusal to waive his rights and informed Carney that if he did not answer the questions regarding his fitness to perform his official duties that he would be subject to "departmental disciplinary proceedings."

At this point during the questioning, a discussion ensued between the city solicitor and Carney's attorney about whether the answers to the questions could be used against Carney in court. Carney's attorney inquired what efforts had been made to obtain immunity for Carney.[5] On advice of counsel, Carney

---

[5] Part of the confusion regarding the use of Carney's statements in a subsequent criminal proceeding arises out of the word "immunity." The Superior Court's declaratory judgment in *Doe* v. *Springfield*, *post* at 1010 states that "[a]bsent a valid granted immunity, the officers may exercise their constitutional rights and refuse to answer questions." In Massachusetts, a grant of immunity may be obtained for grand jury proceedings only from a single justice of the Supreme Judicial Court. See G. L. c. 233, §§ 20C - 20I (1986 ed.). We have previously held, however, that where a defendant relies on the promise made by an assistant district attorney, the court will enforce the promise because the sovereign must adhere to the highest degree of ethics. See *Commonwealth* v. *Benton*, 356 Mass. 447, 448-449 (1969). Informal "immunity" under the Fifth Amendment to the United States Constitution can also arise where public employees are compelled to answer questions narrowly and specifically related to their job performance. See, e.g., *Garrity* v. *New Jersey*, 385 U.S. 493 (1967). Although not under the umbrella of statutory immunity, such statements are inadmissible in a subsequent criminal proceeding because they result from compelled testimony

refused to answer any further questions and was again suspended for a five-day period. He appealed the suspension.

On August 20, 1984, Carney received notice of disciplinary charges and, after a hearing on August 24, 1984, before the board of police commissioners, Carney was discharged as a police officer for insubordination, neglect, disobedience of orders, and an act contrary to the good order and discipline of the department.

Carney then appealed the decision to the commission, as provided by G. L. c. 31, §§ 41-43 (1986 ed.). On October 23, 1984, the commission heard the consolidated appeals from the two five-day suspensions and Carney's discharge from the department. The commission found no violation of Carney's rights under either the United States or Massachusetts Constitutions and that the questions propounded to Carney fell within the permissible scope of inquiry as established by both State and Federal law. Accordingly, the commission concluded that just cause existed to support the actions taken by the authority against Carney, and recommended upholding the two five-day suspensions and the discharge.

Despite subsequent appeals to the commission, to the District Court, and, by an action in the nature of certiorari, to the Superior Court as provided by G. L. c. 249, § 4 (1986 ed.), the commission's decision to uphold Carney's suspension and discharge was repeatedly affirmed.

Carney presents two issues on appeal: (1) whether the department properly advised Carney of his options and the specific consequences of his refusal to answer questions put to him; and (2) whether the department adequately assured Carney of the scope of his immunity from subsequent criminal prosecution if he answered the questions. For the reasons set forth below, we conclude that the department, in its interrogation of Carney, failed in both these respects.

3. *Consequences resulting from refusal to respond.* It is well settled that public employees cannot be discharged simply

under the Fifth Amendment. *Baker* v. *Lawrence,* 379 Mass. 322, 331 n.14 (1979) (immunity arises because of pressure of job sanction even absent statute). Therefore, the exclusionary rule found in the Fifth Amendment automatically bars their admissibility. *Garrity, supra* at 500.

because they invoke their privilege under the Fifth Amendment to the United States Constitution not to incriminate themselves in refusing to respond to questions propounded by their employers. *Uniformed Sanitation Men Ass'n, Inc.* v. *Commissioner of Sanitation of New York*, 392 U.S. 280, 283-284 (1968). Statements compelled from employees at a disciplinary hearing, under threat of discharge, cannot constitutionally be held against them in a later criminal prosecution. *Garrity* v. *New Jersey*, 385 U.S. 493, 500 (1967). Notwithstanding the Fifth Amendment prohibition, a public employer does not remain totally helpless in discovering information relevant to its employees' job performance. Indeed, as we held in *Broderick* v. *Police Comm'r of Boston*, 368 Mass. 33, 38 (1975), cert. denied, 423 U.S. 1048 (1976), public employees can be discharged for refusing to answer questions narrowly drawn and specifically related to their job performance, where the answers cannot be used against them in a criminal proceeding.

Where public employers compel answers in an investigation, however, the employer, at the time of the interrogation, must specify to the employee the precise repercussions (i.e., suspension, discharge, or the exact form of discipline) that will result if the employee fails to respond. See *Kalkines* v. *United States*, 473 F.2d 1391, 1393 (Ct. Cl. 1973). Where, as here, economic sanctions threaten an individual's livelihood, a general warning that the employee may be subject to "departmental disciplinary proceedings" is insufficient.[6] Moreover, an employee's awareness that other employees have been punished in similar circumstances does not render recitation of the warning unneces-

---

[6] Although the United States Supreme Court has not spoken directly to this issue, in factually similar cases the Court has specifically noted instances where public employees were informed of the precise punishment, usually dismissal, for refusing to answer questions put to them by their employers. See, e.g., *Garrity* v. *New Jersey*, 385 U.S. 493, 494 (1967) (each applicant warned that refusal to answer could result in removal from office); *Uniformed Sanitation Men Ass'n, Inc.*, *supra* at 284 (employees required to answer questions where threatened by loss of public employment); accord *Confederation of Police* v. *Conlisk*, 489 F.2d 891, 895 (7th Cir. 1973) (police officers aware that refusal to answer questions could result in discharge).

sary; the burden to inform remains on the employer at each appropriate stage of the questioning. The record demonstrates that Deputy Chief Flanagan, while interrogating Carney, failed to meet this standard.

4. *Transactional immunity required to compel testimony.* An employer may compel an employee under threat of discharge to answer questions reasonably related to job performance. *Patch* v. *Mayor of Revere*, 397 Mass. 454, 455 (1986). Because of the United States Constitution's Fifth Amendment privilege against self-incrimination, however, any answers obtained involuntarily may not be used against the employee in a subsequent criminal proceeding. *Garrity* v. *New Jersey*, 385 U.S. 493, 500 (1967). This Fifth Amendment exclusionary rule provides the functional equivalent of "use" or "derivative use" immunity, which is all the Fifth Amendment requires to displace the privilege. *Kastigar* v. *United States*, 406 U.S. 441, 453 (1972). In *Lefkowitz* v. *Turley*, 414 U.S. 70, 85 (1973), the United States Supreme Court stated, however, that where answers were elicited under threat of the loss of employment, "States must offer to the witness *whatever* immunity is required to supplant the privilege . . . ." (emphasis added). This court has traditionally exercised its prerogative to interpret art. 12, the Massachusetts Constitution's privilege against self-incrimination, more broadly than its Federal counterpart.[7] See *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 795-796 (1982). In Massachusetts, art. 12 of the Declaration of Rights requires transactional immunity to supplant the privilege against self-incrimination,[8] even in the context of public employment. Cf.

---

[7] The Fifth Amendment states in pertinent part that "[no]. . . person shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Article 12 of the Declaration of Rights is somewhat broader and states: "No subject shall be . . . compelled to accuse, or furnish evidence against himself."

[8] The Supreme Court described transactional immunity as that which "grant[s] immunity from prosecution for offenses to which compelled testimony relates." *Kastigar* v. *United States*, 406 U.S. 441, 443 (1972). Use and derivative use immunity are described as "immunity from the use of compelled testimony and evidence derived therefrom." *Id.*

*Attorney Gen.* v. *Colleton, supra* at 793 (transactional immunity required in context of private citizen).

As our opinion in *Colleton* makes clear, this court has never before faced the question whether transactional immunity is needed to overcome a claim of testimonial privilege by a public employee. *Colleton, supra* at 798. While *Baker* v. *Lawrence,* 379 Mass. 322 (1979), and *Silverio* v. *Municipal Court of the City of Boston,* 355 Mass. 623, cert. denied, 396 U.S. 878 (1969), recognized the sufficiency of use immunity under the United States Constitution, neither case focused on the removal of the employee's claim of privilege, but rather on the official's ability or fitness for government service. *Colleton, supra* at 798. Significantly, neither the plaintiffs in *Baker* and *Silverio, supra,* nor the plaintiff in *Patch* v. *Mayor of Revere, supra,* invoked the privilege against self-incrimination under art. 12, but chose to rely instead on the Fifth Amendment.

The record clearly demonstrates that Officer Carney never received from the district attorney a promise not to prosecute him. Assuming without deciding that a police official in charge of an internal investigation could make an enforceable promise not to prosecute without the district attorney's assent, the record does not reflect such a promise was made. Carney, therefore, has demonstrated error adversely affecting his material rights resulting from the trial judge's allowance of Springfield's motion for summary judgment.

The judgment is reversed and a new judgment shall be entered quashing the decision of the Civil Service Commission.

*So ordered.*