Agostini, J.
INTRODUCTION
The plaintiff, the Registry of Motor Vehicles (Registry), seeks certiorari review, pursuant to G.L.c. 249, §4, of an order of a district court judge reversing the Registiy’s decision to suspend James L. Wehry’s (Wehiy) driver’s license for 120 days for refusing to take a breathalyzer test. For the following reasons, the Registiy’s motion for judgment on the pleadings is ALLOWED.
BACKGROUND
The facts of this administrative appeal are not in dispute. On January 25, 2002, at approximately 8:00 p.m., Wehiy was operating a motor vehicle that was involved in an accident on Route 8 in the Town of Hinsdale. The Hinsdale police responded to the scene and after certain observations[2] arrested Wehiy for operating a motor vehicle under the influence of alcohol. He was transported to the Hinsdale police department and read his Miranda rights. At this point Wehiy demanded to call his attorney and also insisted on taking a blood test to determine his level of intoxication. The officers requested that he take a chemical test of his breath (“breathalyzer” test), which Wehiy refused.[3] Apparently, Wehiy was under the impression that he had a choice between a breathalyzer test and a blood test and he steadfastly refused to take the breathalyzer test and insisted on talking to his attorney and seeking a blood test.
After a reasonable period of time, the police concluded that Wehiy was refusing a breathalyzer test and they telephoned his attorney, who returned the call within 10 minutes. Wehiy was transported to the Dalton police station and a clerk magistrate set bail and he was released. He went to the Berkshire Medical Center, with his attorney, but decided not to get a blood test.
The defendant was notified by the Registry of Motor Vehicles that his right to operate a motor vehicle has been suspended. Wehiy timely appealed his suspension and an evidentiary hearing was held on February 6, 2002, before a registiy officer. After the hearing the officer suspended Wehiy’s license for refusing to take a breathalyzer test and issued written findings. The crux of the dispute was Wehiy’s claim, as a matter of law, that he was allowed to elect the type of test he could take either a blood test or a breathalyzer test. The hearing officer held that the defendant does not have the right to choose the test, opining that the law permits a blood test only if the person is brought to a hospital instead of the police station.
Wehiy timely appealed the decision to the Central Berkshire District Court pursuant to G.L.c. 90, §(1)(g). On March 28, 2002, the Court (Beattie, J.) overturned the Registiy’s decision concluding that the hearing officer made an erroneous interpretation of law in ruling that “M.G.L.c. 90, Sec. 24(f) 1 [sic] in no way implies that a defendant may only opt for a blood test if at the hospital.” The Registiy filed this Petition for review in the nature of certiorari pursuant to G.L.c. 249, §4, claiming that the district court judge committed an error of law as the statute does not give an intoxicated motorist the option of taking a blood test instead of a breath test.
*647 DISCUSSION
G.L.c. 249, §4 provides, in pertinent part: “[a] civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court . . .” Review pursuant to G.L.c. 249, §4 “serves to ‘correct errors’ in administrative proceedings by means of judicial review where such oversight is not otherwise provided by statute.” Yerardi’s Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Randolph, 19 Mass.App.Ct. 296, 900 (1985). The court is limited to correcting only substantial errors of law, evidenced by the record, that adversely affect material rights. See, e.g., Gloucester v. Civil Serv. Comm’n, 408 Mass. 292, 297 (1990); Carney v. City of Springfield, 403 Mass. 604, 605 (1988); Rose v. Board of Selectmen of Falmouth., 36 Mass.App.Ct. 34, 35 (1994).
Review of a certiorari petition is on the administrative record. The function of certiorari review is to correct errors of law not otherwise subject to review, where such errors are apparent on the record and adversely affect material rights. Carney v. City of Springfield, 403 Mass. 604, 605 (1995); MacHenry v. Civil Service Comm’n, 40 Mass.App.Ct. 632, 634 (1996). Relief in the nature of certiorari is warranted where a plaintiff demonstrates errors that are so substantial and material that, if allowed to stand, they will result in manifest injustice to a petitioner who is without any other available remedy. Johnson Products, Inc. v. City Council of Medford, 353 Mass. 540, 541 n. 2 (1968); Tracht v. County Comm’rs of Worcester, 318 Mass. 681, 686 (1945).
In a certiorari case, the court is not authorized to weigh evidence, find facts, exercise discretion, or substitute its own judgment. The court’s role is limited to determining whether the decision was legally erroneous, supported by substantial evidence or so devoid of factual support as to be arbitrary or capricious. See FIC Homes of Blackstone, Inc. v. Conservation Commission of Blackstone, 41 Mass.App.Ct. 681, 684-85 (1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. New Boston Garden Corp. v. Board of Assessors of Boston, 383 Mass. 456, 466 (1981), Under the arbitrary and capricious standard, it is the plaintiffs “formidable burden of proving the absence of any conceivable ground upon which the regulations can be upheld.” Worcester Sand & Gravel Co. v. Board of Fire Prevention Regulations, 400 Mass. 464, 466 (1987), citing Arthur D. Little, Inc. v. Commissioner of Health & Hosps. of Cambridge, 395 Mass. 535, 553 (1985).
As required by law,[4] the hearing officer found that the police had reasonable grounds to believe that Wehiy was operating the vehicle under the influence of alcohol and that he was placed under arrest. Wehiy does not contest these findings. However, the defendant does contest that he refused to submit to a test as he asserts that he was willing to submit to a blood test at a hospital. The district court judge supported this contention and reversed the Registry’s determination.[5] Since there is no dispute that Wehiy was willing to submit to a blood test, the only issue is whether an intoxicated driver has the right, under G.L.c. 90, §24(1)(f)(1), to select the type of test, either breath or blood analysis. General Laws c. 90, §24(1)(f)(1), commonly known as the implied consent law, provides: “Whoever operates a motor vehicle upon any [public] way . . . shall be deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor; provided, however, that no such person shall be deemed to have consented to a blood test unless such person has been brought for treatment to a medical facility ... If the person arrested refuses to submit to such test or analysis, after having been informed that his license ... to operate motor vehicles ... in the commonwealth shall be suspended for a period of ninety days for such refusal, no such test or analysis shall be made, but the police officer before whom such refusal was made shall immediately prepare a written report of such refusal... [which] shall be endorsed by a third person who shall have witnessed such refusal . . . [and] shall be sworn to under the penalties of peijuiy by the police officer before whom such refusal was made . . . [It] shall set forth the grounds for the officer’s belief that the person arrested had been driving a motor vehicle . . . while under the influence of intoxicating liquor, and shall state that such person had refused to submit to such chemical test or analysis when requested by such police officer to do so. Each such report shall be endorsed by the police chief. . . and shall be sent forthwith to the registrar. Upon receipt of such report, the registrar shall suspend any license ... to operate motor vehicles issued to such person ... for a period of ninety days.”
Another statute that plays a role in this analysis is G.L.c. 263, §5A. Section 5A requires: “A person held in custody at a police station or other place of detention, charged with operating a motor vehicle while under the influence of intoxicating liquors, shall have the right, at his request and at his expense, to be examined immediately by a physician selected by him.” The statute requires that the police officer in charge of the police station or other place of detention inform a person held in custody in such a place and charged with operating a motor vehicle while under the influence of intoxicating liquor, immediately on being booked, that he has the right “at his request and at his expense, to be examined immediately by a physician selected by him.” Section 5A further requires that the police afford that person a reasonable opportunity to exercise that right. Commonwealth v. Alano, 388 Mass. 871, 879 (1983); Commonwealth v. *648 Durning, 406 Mass. 485, 493 n. 8 (1990); Commonwealth v. Lindner, 395 Mass. 144, 148 (1985) (“[The] statute places primaiy responsibility for an independent blood test in the hands of the defendant, not the police”). Pursuant to G.L.c. 90, §(1)(e), the ability of the Commonwealth to introduce evidence of a chemical or blood test in an OUI case is dependent on the defendant having the opportunity to obtain an independent blood test.
The arrestee will need to travel to a hospital or medical clinic to exercise this statutory right. See Commonwealth v. Priestley, 419 Mass. 678, 681 (1995) (police must either call bail magistrate or advise arrestee of opportunity to arrange bail in order to facilitate release, thereby providing reasonable opportunity for §5A examination); Commonwealth v. Rosewarne, 410 Mass. 53, 54 (1991) (police need not accompany detainee to hospital for independent test). The language of the statute is clear; the onus is on the arrestee to arrange for the independent testing. Although the statute is not a model of clarity regarding this issue, it is reasonably clear that the Legislature intended that an arrestee would be required to take a breathalyzer test, with an infrared breath-testing device, and failure would result in the loss of license. At this point the arrestee would be entitled to an independent test under his direction and at his expense. The only exception would be if the person was transported to a hospital, and under those circumstances, a blood test would be warranted. The argument that the police are required to give the arrestee an option of tests, and if a blood test is chosen, the police must transport and pay[6] for such a test, is contrary to the statutes and case law. See Commonwealth v. Rosewarne, 410 Mass. 53, 54 (1991).
If we accept the defendant’s position that G.L.c. 90, §(1)(f)(1) allows an arrestee the ability to chose the test, such an interpretation would render G.L.c. 263, §5A superfluous. There would be no need to have an independent blood test, if you have the right to choose such a test in the first instance. The regulations that outline the hearing procedure support this conclusion.[7] See e.g. Commonwealth v. Lively, 30 Mass.App.Ct. 970, 972 (1991) (where an arrestee has opted for both a breathalyzer test and an independent examination, failure to permit the latter until completion of the former is not an unreasonable hindrance). There is a certain logic in having arrestees tested by the police initially (implied consent) and, if there is any concern in the testing, the person may have an independent test done at his own expense.
Wehry had an obligation under G.L.c. 90, §24 (1) (f)(1) to take the breathalyzer test. His demand for a blood test in lieu of a breathalyzer test is not supported by the law and, accordingly, the Registry was warranted in concluding that Wehiy refused the test and suspension of his license was required.
Finally, Wehiy has raised the issue of the Registry’s failure to submit a complete record of the hearing before the district court judge, i.e. transcript or audio recordings. It is somewhat unclear the basis for such an argument as all of the documents before the registry officer were produced, as well as the decisions of the officer and Judge Beattie. Since the district court judge found that the hearing officer made an erroneous interpretation of law, any transcript or audio recording would be irrelevant.[8]
ORDER
For the foregoing reasons, the plaintiffs motion for judgment on the pleadings is ALLOWED, the order of the District Court is vacated and the decision of the Registry of Motor Vehicles to suspend the defendant’s license is reinstated.

The police could smell alcohol on Wehry’s breath and in the car. His speech was slurred and his eyes red and glassy. Although Wehiy denied any drinking, his passenger and girlfriend, Annika Eng, stated that he had a few drinks that evening. The defendant refused to perform any field sobriety test.

Pursuant to G.L.c. 90, §24K a blood alcohol test must be performed by a certified operator using an infrared breath-testing device and the Secretary of Public Safety is required to promulgate rules and regulations establishing a uniform method of statewide testing and training for the operators. See Commonwealth v. Barbean, 411 Mass. 782, 784 (1992).

See G.L.c. 90, §24(1)(g) and 540 CMR 11.00.

On the form completed by the court, Judge Beattie found that the Registry made an erroneous interpretation of law concluding that “MGLc. 90, sec 241(f) in no way implies that a defendant may only opt for a blood test if at the hospital,” and further concluded that the Registry made a determination which is unsupported by the evidence by finding that the “defendant did not refuse a ‘chemical test.’ In fact, defendant requested on numerous occasions to take a chemical test of the blood as provided in the statute.” The Registry concedes that Wehiy was agreeable to have a blood test.

Under this argument, if the arrestee could not pay for the test, the police would then be forced either to pay for the cost of the blood test or return the person back to the station and attempt a breathalyzer test. Given that such a test is time sensitive, it is hard to imagine that the Legislature intended this result and the corresponding risks of transportation.

 540 CMR 11.02 states, “For purposes of this hearing, and pursuant to M.G.L.c. 90, §24(1)(f)(1), the operator shall be deemed to have consented to a breath test, and not a blood test unless brought to a medical facility for treatment. If an operator consents to and completes a breath test requested and administered by a police officer, the operator may elect to obtain a comparison blood test pursuant to M.G.L.c. 90, §24(e).”

Under G.L.c. 90, Sec. 24(1)(g), judicial review in the district court is not de novo and is on the record established at the hearing before the registrar and limited to situations where the Registry exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence.