KEVIN J. FURTADO *vs.* TOWN OF PLYMOUTH & others.[1]

No. 06-P-892.

Plymouth. March 7, 2007. - June 11, 2007.

Present: BERRY, SMITH, & DOERFER, JJ.

Further appellate review granted, 449 Mass. 1109 (2007).

*Police,* Polygraph test. *Public Employment,* Police, Polygraph test. *Civil Service,* Police. *Statute,* Construction.

This court concluded that the defendant town police department did not violate a police officer's rights under G. L. c. 149, § 19B(2), by requiring him to submit to a polygraph test in the course of an investigation to determine if he should be disciplined or terminated, where the investigation, although conducted after a grant of immunity to the police officer, clearly concerned allegations of criminal conduct, as distinguished from violations of terms of employment or rules associated therewith. [322-325]

CIVIL ACTION commenced in the Superior Court Department on July 25, 2002.

The case was heard by *David A. McLaughlin,* J., on motions for summary judgment.

*Robert M. Mendillo* for the plaintiff.

*Leonard H. Kesten* for the defendants.

DOERFER, J. The plaintiff, Kevin J. Furtado, claims that his rights under G. L. c. 149, § 19B(2), were infringed when the town of Plymouth (town) police department (as his employer) ordered him to submit to a lie detector test in the course of an investigation to determine if he should be disciplined or terminated. His alleged misconduct would have amounted to a crime, if true. The relevant part of the statute reads:

"It shall be unlawful for any employer or his agent, with respect to any of his employees . . . to subject such person to, or request such person to take a lie detector test

---

[1]Kenneth A Tavares, David F. Malaguti, David J. Rushforth, and Christopher R. Lombard, as members of the board of selectmen of Plymouth; Eleanor S. Beth, individually and as town manager of Plymouth; Robert J. Pomeroy, individually and as chief of the Plymouth police department; and the Plymouth police department.

within or without the commonwealth, or to discharge, not hire, demote or otherwise discriminate against such person for the assertion of rights hereunder. *This section shall not apply to lie detector tests administered by law enforcement agencies as may be otherwise permitted in criminal investigations*" (emphasis added).

G. L. c. 149, § 19B(2), as amended through St. 1985, c. 587, § 1. We conclude that the underlined exception applies where the conduct complained of, if true, would constitute a crime even though criminal prosecution was not possible at the time of the administration of the polygraph. Thus, the defendants[2] did not violate Furtado's statutory rights under G. L. c. 149, § 19B(2).

*Background.* The matter was decided on cross motions for summary judgment on undisputed material facts. In July of 1999, the police chief for the town was informed that allegations of sexual abuse of two minor children had been made against Furtado, a police officer for the town. Furtado was placed on administrative leave with pay.

On September 13, 1999, the Plymouth County district attorney's office (district attorney) informed the police chief of the fact that an investigation had been "completed" and that a decision had been made, "[b]ased on the evidence . . . gathered," not to press criminal charges against Furtado. The police chief was advised, pursuant to *Carney* v. *Springfield*, 403 Mass. 604 (1988),[3] that the district attorney was "referring this case to [him] for whatever administrative action [he] deemed appropriate."

On September 16, 1999, the police chief informed Furtado that an internal investigation would be conducted into the allega-

---

[2]Furtado agreed to dismiss his claims against the town's police department, but pressed his claims against the town and two individuals, Robert J. Pomeroy and Eleanor S. Beth.

[3]"[P]ublic employees cannot be discharged simply because they invoke their privilege under the Fifth Amendment to the United States Constitution not to incriminate themselves in refusing to respond to questions propounded by their employers." *Carney* v. *Springfield, supra* at 608-609. However, it is the case that "public employees can be discharged for refusing to answer questions narrowly drawn and specifically related to their job performance, where the answers cannot be used against them in a criminal proceeding." *Ibid.*, citing *Broderick* v. *Police Commr. of Boston*, 368 Mass. 33, 38 (1975), cert. denied, 423 U.S. 1048 (1976).

tions that he "engaged in criminal activity while off duty."[4] The police chief "directed" Furtado to "write a complete and full report" responding to the allegations. He cautioned Furtado that "[f]ailure to submit the report as required in this written order will be considered insubordination and as grounds for disciplinary action, up to and including, termination from [his] employment as a Plymouth Police Officer." Enclosed with this written "order" from the police chief was a copy of the letter from the district attorney, which confirmed that no criminal charges would be filed in this matter.

Before submitting such a report, private counsel for Furtado directed a letter dated September 22, 1999, to the police chief, advising that under Massachusetts law, a public employee could not be lawfully compelled to give testimony, under a threat of disciplinary action, absent a proper grant of immunity. Counsel also asserted that the police chief lacked the authority to compel testimony from Furtado, by use of a polygraph or lie detector test,[5] because the town "[had] not secured the necessary guarantees of immunity required" by law. Ultimately, the district attorney and the Attorney General did grant transactional immunity to Furtado,[6] and on November 1, 1999, Furtado did provide the police chief with a written statement explaining his version of what had happened.[7]

In a letter dated November 9, 1999, the police chief "ordered"

---

[4]The police chief identified the allegations as follows:

> "Specifically, two children who live in your neighborhood allege that you indecently assaulted them. [One child] has alleged that you grabbed his penis on the outside of his clothing on more than one occasion this year. [The other child] has alleged that, on more than one occasion this year, you put your hand down inside his pants and touched his penis while simultaneously placing your own hand inside your own pants. [He] alleges that you told him not to tell anyone."

[5]In the letter, counsel said he had been informed that the police chief had "also made a verbal request that Officer Furtado also agree to take a polygraph exam at a later date as part of the department's investigation."

[6]The letter from the office of the Attorney General stated that "the Plymouth County District Attorney's Office has related to [this office] that they have reviewed these matters at your request, and declined prosecution of Officer Furtado because the family of the two complainants [brothers aged five and seven] refuse to cooperate in a prosecution."

[7]In his written statement, Furtado stated that he never touched the children

Furtado to submit to a polygraph test. Before having issued this order, the police chief consulted with the town manager, who is said to have concurred in the decision to issue an order requiring Furtado to submit to a polygraph test. Furtado complied and the polygraph test occurred on November 16, 1999. Subsequently, by a letter dated December 6, 1999, counsel for Furtado asserted that it would be improper for the town to use the test results in an internal review of this matter.[8] On January 6, 2000, the police chief advised Furtado that there was insufficient evidence to warrant disciplinary action and that Furtado could return to work.

In 2002, Furtado commenced the present action in Superior Court.[9] Furtado appeals from the ruling of the judge allowing the town's motion for summary judgment and denying his motion.

*Discussion.* Furtado argues that the defendants violated G. L. c. 149, § 19B(2), by ordering him to take a polygraph test as part of an internal departmental investigation, when there was no "ongoing criminal investigation" or possibility of prosecution, as he had been granted immunity from the district attorney and the Attorney General *before* he was ordered to submit to the polygraph test.[10] This presents a "Catch-22" situation: Furtado's urged interpretation of the statutory exception would result in the situation where a law enforcement agency would not be permitted to request its employee-police officer to take a polygraph test once the officer received immunity from criminal

---

inappropriately. The only close contact he had with the children occurred while they were swimming in his pool, during which times there would be "horseplaying." Furtado's son and wife and the mother of the children were present on these occasions.

The record also contains an unsolicited letter from the parents of the minor boys claiming that Furtado never did anything inappropriate to their sons and that they never accused him of such behavior. They regretted that the situation became "twisted" and "exaggerated."

[8] As we are not asked to address the issue of how the town may use Furtado's responses and results of the polygraph test, we decline to address it.

[9] Later, Furtado, by an amended complaint, added a claim for defamation, which he ultimately waived at the summary judgment stage.

[10] It is of no consequence for purposes of our analysis that the police chief ordered the defendant to submit to the polygraph test *after* the grants of immunity were given to Furtado. In any event, prior to receiving the grants of immunity, Furtado knew of the existence of an internal investigation relating to allegations that he "engaged in criminal activity while off duty" and had been asked to submit to a polygraph test at a later date.

prosecution, as there would be no "ongoing criminal investigation." However, without a grant of immunity from future criminal prosecution, a law enforcement agency would not be allowed lawfully to administer to its employee a polygraph test within the exception of G. L. c. 149, § 19B(2).[11] See *Baker* v. *Lawrence*, 379 Mass. 322, 331 (1979) (adequate immunity must be assured with respect to police officer's responses); *Baglioni* v. *Chief of Police of Salem*, 421 Mass. 229, 230 (1995) (before police officer "may be compelled to make any statement he must be granted State transactional immunity as to any such statements"). See also *Carney* v. *Springfield*, 403 Mass. at 610; *Commonwealth* v. *Dormady*, 423 Mass. 190, 193-194 (1996). We decline to adopt Furtado's interpretation, which would clearly have the effect of neutering the exception. Cf. *Baker* v. *Lawrence*, *supra* at 328 (dismissing plaintiffs' interpretation of statute as it "would reduce the exception of the second sentence of § 19B[2] to a virtual nullity").

Furtado relies on language in *Baker* v. *Lawrence* for the proposition that the statutory exception applies only where the conduct at issue is "the subject of an ongoing criminal investigation." *Id.* at 329. Furtado places undue weight on this particular language and misreads the context in which it was used. In *Baker* v. *Lawrence*, the plaintiffs argued that the police officers must have voluntarily agreed to take the polygraph test before the employer (law enforcement agency) is relieved of the prohibition in § 19B(2) against making a request. In rebuffing the plaintiffs' reading of the statutory exception, the Supreme Judicial Court inferred that the exception "does not look to any part of the criminal trial process, but is rather addressed to the investigation of possible criminal activity." *Ibid.* Responding to the plaintiffs' contention that the investigation of the alleged crime (a larceny) must be characterized as departmental, not

[11]Such immunity must sufficiently protect the officer's constitutional rights against self-incrimination under the Massachusetts Declaration of Rights and the Fifth Amendment to the United States Constitution, such that the individual "must be assured that the purported immunity (a) is effective Statewide and (b) protects against use of any statements in the prosecution of any Federal crime." *Baglioni* v. *Chief of Police of Salem*, 421 Mass. 229, 233-234 (1995) (footnotes omitted). Here, Furtado received adequate assurance of immunity from both the district attorney and the Attorney General. Compare *ibid.*

criminal, and thus not within the statutory exception, the court stated:

> "First, we think the present context was criminal from the outset, with the store owner claiming a theft and Miranda warnings cautiously administered before questioning began. But the point need not be labored, as the parties agree on the record that the alleged larceny is 'the subject of *an ongoing criminal investigation.*' It does not detract from our conclusion that the investigation also had an obvious departmental aspect. Second, there is hyperbole in the idea that official investigations, particularly of police officers, may all be indifferently denominated criminal. *It is enough to say that there must be an alleged crime in the picture (not, for example, mere violation of a departmental regulation)*, and that a requirement of good faith on the side of the department is surely to be implied." (Emphasis supplied.)

*Id.* at 329-330 (footnote omitted). It is clear that when including the phrase "ongoing criminal investigation" in the opinion, the Supreme Judicial Court was merely quoting language that the parties used and was not setting forth a strict requirement. Acknowledging the legislative history and policy objectives of the statute, the court noted that "the polygraph may be useful as an investigatory aid," *id.* at 328 n.9, and determined that the exception applies "where a law enforcement agency is conducting an investigation into a crime alleged to have been committed by a person in connection with the duties of his employment, and the agency is permitted, i.e., not forbidden, to administer a polygraph test to that employee." *Id.* at 327.[12] Moreover, a law enforcement agency is allowed to request such a polygraph test with the purpose that refusal to cooperate could result in "implied job sanctions." *Ibid.*

Here, the investigation continued after the grant of immunity

---

[12]We note numerous instances of support in our cases for the proposition that public employees, and especially police officers, may be required to answer questions reasonably related to the performance of their official duties, under threat of discharge for noncooperation. See *Patch* v. *Mayor of Revere*, 397 Mass. 454, 455 (1986). See also *Baker* v. *Lawrence*, 379 Mass. at 331. The allegations about Furtado's behavior, even though off duty, reasonably related to his ability and fitness to perform his official responsibilities as a police officer — a position requiring a high standard of conduct, especially considering the need to promote public confidence in the police. See *O'Connor*

and clearly concerned allegations of criminal conduct as distinguished from violations of terms of employment or rules associated therewith. See *id.* at 329-330. There is thus no merit to Furtado's assertion that there was no lawful basis upon which he could be required to submit to a polygraph or lie detector test.

*Conclusion.* As the defendants complied with the guidelines set forth by related case law, with sufficient immunity granted, G. L. c. 149, § 19B(2), was not violated in ordering Furtado to submit to a polygraph test.[13]

*Judgment affirmed.*

v. *Police Commr. of Boston*, 408 Mass. 324, 328 (1990), quoting from *National Treasury Employees Union* v. *Von Raab*, 489 U.S. 656, 679 (1989) (recognizing high standard of conduct to which police officers are held in light of "special, and obvious, physical and ethical demands" of job as well as need to promote public confidence in police); *Police Commr. of Boston* v. *Civil Serv. Commn.*, 39 Mass. App. Ct. 594, 601 (1996) (observing that, regardless of whether conduct occurred on or off duty, individual's status as police officer must be considered in determining appropriate discipline). As reiterated by the Supreme Judicial Court in *Attorney Gen.* v. *McHatton*, 428 Mass. 790, 793-794 (1999), quoting from *Police Commr. of Boston* v. *Civil Serv. Commn.*, 22 Mass. App. Ct. 364, 371 (1986):

> "Police officers must comport themselves in accordance with the laws that they are sworn to enforce *and* behave in a manner that brings honor and respect for rather than public distrust of law enforcement personnel. They are required to do more than refrain from indictable conduct. Police officers are not drafted into public service; rather, they compete for their positions. In accepting employment by the public, they implicitly agree that they will not engage in conduct which calls into question their ability and fitness to perform their official responsibilities." (Emphasis in original.)

See generally *Local 346, Intl. Bhd. of Police Officers* v. *Labor Relations Commn.*, 391 Mass. 429, 439-440 (1984) ("Few institutions depend as heavily on integrity and credibility for the effective performance of their duties as do police departments. We have little hesitation in concluding that, when the functions of a police department are disrupted by allegations of criminal conduct by police officers, the police department's decision to subject officers reasonably suspected of criminal activities to lie detector tests furthers law enforcement objectives that override the employees' interest in negotiation" [footnotes omitted]). Therefore, "[t]o whatever extent (if any) the statute imposes a requirement that the crime being investigated have some connection to the employee's job, that requirement has been met in this case." *Bellin* v. *Kelley*, 435 Mass. 261, 271 (2001).

[13]The defendants' request for attorney's fees and costs incurred on the appeal is denied.