Kevin J. Furtado *vs.* Town of Plymouth & others.[1]

Plymouth. March 3, 2008. - May 28, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Police,* Polygraph test. *Public Employment,* Police, Polygraph test. *Civil Service,* Police. *Statute,* Construction.

Discussion of the scope of the "criminal investigations" exception in G. L. c. 149, § 19B (2), to the prohibition against an employer requiring an employee to take a lie detector test. [532-534]

This court concluded that the exception in G. L. c. 149, § 19B (2), to the prohibition against an employer requiring an employee to take a lie detector test, permitting law enforcement agencies to administer such tests "as may be otherwise permitted in criminal investigations," applied where the conduct under investigation would constitute a crime, even though criminal prosecution was not possible at the time of the administration of the test. [534-538]

Civil action commenced in the Superior Court Department on July 25, 2002.

The case was heard by *David A. McLaughlin,* J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Robert M. Mendillo* for the plaintiff.

*Leonard H. Kesten* for the defendants.

*Bryan C. Decker, John M. Becker, & Patrick N. Bryant,* for Massachusetts Coalition of Police, amicus curiae, submitted a brief.

*John M. Collins,* for Massachusetts Chiefs of Police Association, amicus curiae, submitted a brief.

---

[1] The board of selectmen of Plymouth; Eleanor S. Beth, individually and as town manager of Plymouth; Robert J. Pomeroy, individually and as chief of the police department of Plymouth; and the police department of Plymouth.

Furtado did not oppose the granting of summary judgment in favor of the police department, and the correctness of that ruling is not before us on appeal.

CORDY, J. In 1999, the district attorney for the Plymouth district received a report from the Department of Social Services that included allegations that Kevin J. Furtado, a police officer in the town of Plymouth, had sexually abused two minor children. After investigation, the district attorney decided not to file criminal charges. Instead, the matter was referred to Robert Pomeroy, the town's police chief, for "whatever administrative action [he] deem[ed] appropriate." Pomeroy notified Furtado that the police department would be "conducting an internal investigation into allegations that [he] engaged in criminal activity." He also directed Furtado "to write a complete and full report responding to these allegations" and, subsequently, to take a lie detector examination, on threat of discipline up to and including termination for refusal. Furtado's attorney responded to Pomeroy's order in a letter advising that under Massachusetts law, a public employee cannot be disciplined for refusing to answer questions properly objected to on the basis of the employee's right against compelled self-incrimination, without a grant of immunity.[2] Consequently, until and unless a proper grant of transactional immunity was secured for him, Furtado would not be complying with Pomeroy's directive.

After the district attorney and the Attorney General executed letters granting Furtado transactional immunity, Furtado prepared a report and, thereafter, took a lie detector test administered by a State police examiner. The results of the test are disputed but immaterial to our resolution of the issues in this case. Pomeroy subsequently advised Furtado that the evidence did not warrant taking any disciplinary action against him.

Furtado then brought this action in the Superior Court pursu-

---

[2] In *Carney* v. *Springfield*, 403 Mass. 604, 608-609 (1988), we noted that "[i]t is well settled that public employees cannot be discharged simply because they invoke their privilege . . . not to incriminate themselves in refusing to respond to questions propounded by their employers," and held that "art. 12 of the Declaration of Rights requires transactional immunity to supplant the privilege against self-incrimination, even in the context of public employment." *Id.* at 610.

Transactional immunity is "immunity from prosecution for offenses to which [the] compelled testimony relates." *Id.* at 610 n.8, quoting *Kastigar* v. *United States*, 406 U.S. 441, 443 (1972). See *Baglioni* v. *Chief of Police of Salem*, 421 Mass. 229, 233-234 (1995) (discussing requirements of proper grant of transactional immunity).

ant to G. L. c. 149, § 19B (4),[3] claiming that his rights under G. L. c. 149, § 19B (2), had been violated because he was ordered to take a lie detector test when there was no "ongoing criminal investigation." General Laws c. 149, § 19B (2), reads, in relevant part:

> "It shall be unlawful for any employer or his agent, with respect to any of his employees . . . to subject such person to, or request such person to take a lie detector test within or without the commonwealth, or to discharge, not hire, demote or otherwise discriminate against such person for the assertion of rights arising hereunder. *This section shall not apply to lie detector tests administered by law enforcement agencies as may be otherwise permitted in criminal investigations*" (emphasis added).[4]

A judge granted summary judgment for the defendants, concluding that they were justified in ordering Furtado to take a lie detector test because their departmental investigation "clearly concerned allegations of criminal conduct." The plaintiff appealed, and the Appeals Court affirmed. See *Furtado* v. *Plymouth*, 69 Mass. App. Ct. 319 (2007). We granted Furtado's application for further appellate review.

This case requires us to decide the scope of the underscored "criminal investigations" exception to the statute, particularly whether a law enforcement agency may order a police officer to submit to a lie detector test regarding alleged criminal conduct

---

[3]General Laws c. 149, § 19B (4), allows "[a]ny person aggrieved by a violation of subsection (2) [to] institute . . . and prosecute in his own name . . . a civil action for injunctive relief and any damages thereby incurred, including treble damages for any loss of wages or other benefits. . . ."

Furtado did not waive the protections of G. L. c. 149, § 19B, by agreeing to take the test. "No waiver of the provisions of this section by an employee or prospective employee shall be a defense to . . . civil liability." G. L. c. 149, § 19B (3).

[4]The term "lie detector test" is defined by G. L. c. 149, § 19B (1), to mean "any test utilizing a polygraph or any other device, mechanism, instrument or written examination, which is operated, or the results of which are used or interpreted by an examiner for the purpose of purporting to assist in or enable the detection of deception, the verification of truthfulness, or the rendering of a diagnostic opinion regarding the honesty of an individual."

The parties do not contest that the polygraph examination administered in this case fits within the statutory definition.

when the possibility of prosecution for that conduct has been foreclosed (in this case by the grant of transactional immunity).[5] We conclude, as did the Appeals Court, that the "exception applies where the conduct complained of . . . would constitute a crime even though criminal prosecution was not possible at the time of the administration of the polygraph." *Id.* at 320.

*Discussion.* We first addressed the scope of the "criminal investigations" exception to G. L. c. 149, § 19B, in *Baker* v. *Lawrence*, 379 Mass. 322 (1979).[6] There, the plaintiffs (six police officers) sought an injunction prohibiting the administrative head of the police department of the city of Lawrence from ordering them to submit to polygraph examinations, under threat of job sanctions, regarding their role in an alleged break-in. *Id.* at 325. Their requested relief was denied. *Id.* at 325-326.[7] On appeal, the plaintiffs contended that the "criminal investigations" exception should be limited to circumstances in which the test results would be admissible at trial.[8] In rejecting their argument, the court concluded that "the excepting sentence of

---

[5]We acknowledge the amicus briefs of the Massachusetts Chiefs of Police Association and the Massachusetts Coalition of Police.

[6]In 1985, subsequent to our decision in *Baker* v. *Lawrence*, 379 Mass. 322 (1979), the Legislature rewrote G. L. c. 149, § 19B. See St. 1985, c. 587, § 1. The criminal investigation exception at issue in both the *Baker* case and the present case remained unchanged.

[7]A Superior Court judge had declared that G. L. c. 149, § 19B, "did not preclude the request by the administrative head of department that the officers submit to a test to be administered by the State police, and that an officer, by refusing to comply, could properly be subjected to job sanctions." *Baker* v. *Lawrence, supra* at 325-326.

[8]At the time, *Commonwealth* v. *A Juvenile*, 365 Mass. 421 (1974), set forth the requirements for the admissibility of polygraph tests in criminal cases. The requirements included a "voluntary agreement by the defendant, before the test is administered, to allow the results, whether favorable or unfavorable to him, to be put in evidence at the trial." *Baker* v. *Lawrence, supra* at 328, citing *Commonwealth* v. *A Juvenile, supra.*

That precedent has since been abrogated by *Commonwealth* v. *Mendes*, 406 Mass. 201, 212 (1989), which held that "polygraphic evidence . . . is inadmissible in criminal trials in this Commonwealth either for substantive purposes or for corroboration or impeachment of testimony." But see *Commonwealth* v. *Stewart*, 422 Mass. 385, 389 (1996) (under *Commonwealth* v. *Lanigan*, 419 Mass. 15 [1994], polygraph evidence could be admissible if reliability and accuracy established).

As we have reinforced since *Baker* v. *Lawrence, supra,* nothing in G. L. c. 149, § 19B (2), "has any bearing on the admissibility of the results of

§ 19B does not look to any part of the criminal trial process, but is rather addressed to *the investigation of possible criminal activity*" (emphasis added). *Id.* at 329. The plaintiffs also contended that the police department's investigation of the officers' role in the alleged break-in "must be characterized as departmental, not criminal," and that the statutory exception therefore did not apply. *Id.* The court again disagreed, holding that "[i]t is enough to say that there must be an alleged crime in the picture (not, for example, mere violation of a departmental regulation)," for the "criminal investigations" exception to apply. *Id.* at 329-330. The court also dismissed the plaintiffs' contention "that official investigations, particularly of police officers, may all be indifferently denominated criminal" as "hyperbole," holding instead that "a requirement of good faith on the [part] of the [police] department is surely . . . implied" by the statute. *Id.* at 329, 330.

Essentially, the court concluded that the nature of the conduct giving rise to the investigation determines whether the "criminal investigations" exception applies. We adhered to this interpretation of the "criminal investigations" exception in *Local 346, Int'l Bhd. of Police Officers* v. *Labor Relations Comm'n*, 391 Mass. 429, 429 (1984), where we described our holding in *Baker* v. *Lawrence*, *supra*, as follows: "we held that G. L. c. 149, § 19B, permits a police department to require police officers *suspected of criminal activity* to submit to polygraph testing under threat of discipline" (emphasis added). In the *Local 346* case, the court addressed whether G. L. c. 150E (the collective bargaining statute) required a city to negotiate with the police union over the police department's decision to use lie detector tests in the investigation of suspected criminal activity by police officers. In deciding that the town's decision to order such tests was within the town's exclusive managerial prerogative, *Local 346, Int'l Bhd. of Police Officers* v. *Labor Relations Comm'n*, *supra* at 442, we noted that "[f]ew institutions depend as heavily on their integrity and credibility for the effective performance of their duties as do police departments. We have little hesitation in concluding that, when the functions of a police depart-

---

polygraph examinations in criminal trials." *Bellin* v. *Kelley*, 435 Mass. 261, 271 n.14 (2001).

ment are disrupted *by allegations of criminal conduct by police officers*, the police department's decision to subject officers *reasonably suspected of criminal activities* to lie detector tests furthers law enforcement objectives . . ." (emphasis added). *Id.* at 439-440. We further concluded that "[t]he link between effective law enforcement and a police department's ability to subject its employees suspected of criminal activities to lie detector tests is acknowledged by [G. L. c. 149, § 19B]." *Id.* at 441. See *Patch* v. *Mayor of Revere*, 397 Mass. 454, 456-457 (1986) (imposing sanctions on officers accused of criminal wrongdoing for failing to submit to lie detector tests is consistent with G. L. c. 149, § 19B, and does not violate due process).

Furtado contends, however, that the "criminal investigations" exception focuses not on the nature of the alleged behavior under investigation, but on the consequences that may follow if the allegations prove to be true. If the investigation is departmental and internal, potentially resulting only in administrative action, he reasons, there is no "ongoing criminal investigation" and the exception does not apply.[9] If, by contrast, the investigation is aimed at gathering facts for criminal prosecution, the exception does apply. Here, because he was granted immunity as a precondition for complying with the order to take a lie detector test, Furtado argues that the exception does not apply.

This reading of the statute is, as noted above, inconsistent with our holding in *Baker* v. *Lawrence, supra* at 329-330, that "[i]t is enough to say that there must be an alleged crime in the picture (not, for example, mere violation of a departmental regulation) . . . ." It is also inconsistent with the statute's legislative history.

General Laws c. 149, § 19B, as originally inserted by St. 1959, c. 255, contained no "criminal investigations" exception.

---

[9]Furtado cites *Baker* v. *Lawrence*, 379 Mass. 322, 329 (1979), for his argument that a "criminal investigation," as used in the statute, means "an ongoing criminal investigation." As the Appeals Court correctly noted, "Furtado places undue weight on this particular language and misreads the context in which it was used." *Furtado* v. *Plymouth*, 69 Mass. App. Ct. 319, 323 (2007). "It is clear that when including the phrase 'ongoing criminal investigation' in the [*Baker*] opinion, the Supreme Judicial Court was merely quoting language that the parties used [in their stipulation of facts] and was not setting forth a strict requirement." *Id.* at 324.

It read, in relevant part: "No employer shall require or subject any employee to any lie detector tests as a condition of employment or continued employment." It was rewritten in 1963 to include a broader prohibition, but also to include a law enforcement agency exception: "Any employer who subjects any person employed by him, or any person applying for employment, to a lie detector test, or causes, directly or indirectly, any such employee or applicant to take a lie detector test, shall be punished by a fine of not more than two hundred dollars. *This section shall not apply to lie detector tests administered by law enforcement agencies in the performance of their official duties*" (emphasis added).[10] St. 1963, c. 797. The exception was narrowed in 1973 to its current form: "This section shall not apply to lie detector tests administered by law enforcement agencies *as may be otherwise permitted in criminal investigations*" (emphasis added). St. 1973, c. 620.

The 1973 revision also clarified the first sentence of § 19B to ensure that its protections were extended to persons applying to become police officers. Specifically, that sentence was amended to read: "Any employer who subjects . . . any person applying for employment, including *any person applying for employment as a police officer*, to a lie detector test . . . shall be punished by a fine . . . ." (emphasis added). *Id.* A logical inference to be drawn from the 1973 revisions is that, under the broad wording of the 1963 amendment adding the exception, police departments, in the "performance of their official duties," were administering lie detector tests to applicants for employment. The 1973 amendment specifically made that practice unlawful.

Our understanding of the 1973 and subsequent revisions of G. L. c. 149, § 19B,[11] is furthered by considering the legislative process through which those revisions were adopted. See *School*

---

[10]The wording of this version of the exception was broader than the current one, and ordering the lie detector test at issue in this case undoubtedly would have been permissible under its formulation.

[11]The statute was revised and reorganized again in 1985, St. 1985, c. 587, adding, inter alia, a definition of lie detector test, G. L. c. 149, § 19B (1); a requirement that all applications for employment within the Commonwealth contain notice that it is unlawful for an employer to administer a lie detector test as a condition of employment or continued employment, G. L. c. 149, § 19B (2) (*b*); and making it expressly unlawful to "demote or otherwise discriminate against" an employee who asserts his or her rights under the

*Comm. of Hudson* v. *Board of Educ.*, 448 Mass. 565, 583 n.17 (2007) (comparing adopted language of statutory revision with language of rejected amendments to glean legislative intent). In 1973, 1973 Senate Doc. No. 673 would have entirely eliminated the exception established in 1963. Instead, as passed, the 1973 revisions to the statute retained the exception in amended form. We noted in *Baker* v. *Lawrence, supra* at 328 n.11, that the revision adopted in 1973, when contrasted with the rejected proposal, was "evidence of a legislative desire to balance the privacy interests of employees against the legitimate needs of certain criminal investigations."

Similarly, in 1985, the next time the Legislature revised G. L. c. 149, § 19B, see St. 1985, c. 587, and note 11, *supra*, a bill, 1985 House Doc. No. 5408, would have eliminated the "criminal investigations" exception. Additionally, 1985 House Doc. No. 3241 would have amended the "criminal investigations" exception by adding the following sentence: "However, the results of lie detector tests administered by law enforcement agencies shall not be grounds for disciplinary action by any employer against any employee, including police officers." The House Committee on Commerce and Labor considered those bills, but ultimately recommended that 1985 Senate Doc. No. 1435, which retained the unaltered "criminal investigations" exception, "ought to pass."[12] And, with minor revisions, immaterial to this case, it was enacted by the Legislature.[13]

We have held that "[t]he disappearance of a provision during a legislative journey to enactment does not establish the contrary to be the law, especially when it appears on fair analysis of the final text that the provision would have amounted to surplusage," *Mercy Hosp.* v. *Rate Setting Comm'n*, 381 Mass. 34, 42

---

statute, G. L. c. § 19B (2).

The "criminal investigations" exception, however, was unchanged. G. L. c. 149, § 19B (2).

[12]Additionally, 1985 House Doc. No. 4812 would have added the following sentence to the "criminal investigations" exception: "No employee may be discharged on the basis of a failed lie detector test." That language was also considered by the House Committee on Commerce and Labor and was included neither in the recommended bill nor in St. 1985, c. 587.

[13]1985 Senate Doc. No. 1435 was slightly redrafted into 1985 House Doc. No. 6908, which was enacted into law as St. 1985, c. 587.

(1980), but that does not preclude our consideration of the rejected amendments here.[14] The rejected amendments were not surplusage, as they would have either eliminated the exception entirely or barred the use of lie detector test results in imposing departmental discipline (a topic on which the language, as adopted, is silent). The interpretation urged by Furtado — that the "criminal investigations" exception precludes the use of lie detector tests by police departments during departmental investigations into allegations of criminal wrongdoing by police officers — is, as noted, contrary to our prior decisions interpreting the exception, and finds support only in proposed but unadopted legislation.[15]

Finally, as the Appeals Court accurately described, Furtado's

[14]Thus, while we are "unwilling to accept a mode of statutory construction that permits twists and turns in the wording of unsuccessful bills to preclude this court from reading a portion of a statute in a manner consistent with its language," *Irwin* v. *Ware*, 392 Mass. 745, 773 (1984), we are similarly unwilling to conclude that rejected amendments can never prove illustrative of the meaning of the language ultimately adopted. See *School Comm. of Hudson* v. *Board of Educ.*, 448 Mass. 565, 583 n.17 (2007) (considering rejected amendments in determining legislative intent). While "[t]he views of a subsequent [Legislature] form a hazardous basis for inferring the intent of an earlier one," *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 194 (1976), quoting *United States* v. *Price*, 361 U.S. 304, 313 (1960), the contemporaneous decision of the Legislature to adopt one form of a proposed bill and not another may highlight the intended meaning of the adopted language. See *Suffolk Constr. Co.* v. *Division of Capital Asset Mgt.*, 449 Mass. 444, 454 (2007), quoting *EMC Corp.* v. *Commissioner of Revenue*, 433 Mass. 568, 570 (2001) ("In construing the Legislature's intent, we may also enlist the aid of other reliable guideposts, such as the statute's 'progression through the legislative body, the history of the times, prior legislation, contemporary customs and conditions and the system of positive law of which they are part' ").

[15]We also note that bills proposing to amend G. L. c. 149, § 19B, in the same fashion as 1985 House Doc. No. 3241, by prohibiting the use of lie detector test results in determining administrative punishment of police officers, were introduced each year, at least once, from 1987 to 1990. See 1990 House Doc. No. 1071; 1989 House Doc. No. 1262; 1989 House Doc. No. 4312; 1988 House Doc. No. 1574; 1988 House Doc. No. 3513; 1987 House Doc. No. 1215. None of the proposed amendments passed. See *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 247 (1985) (noting that, in rare circumstances, postenactment legislative history may be relevant). But see *Massachusetts Wholesalers of Malt Beverages, Inc.* v. *Attorney Gen.*, 409 Mass. 336, 344 (1991), quoting *Coca Cola Bottling Co.* v. *Commissioner of Revenue*, 393 Mass. 726, 729-730 n.3 (1985) ("What the . . . legislation involved in this case means cannot rationally be influenced by [subsequent]

proposed reading of G. L. c. 149, § 19B, "presents a 'Catch-22' situation." *Furtado* v. *Plymouth,* 69 Mass. App. Ct. 319, 322 (2007). "Furtado's urged interpretation of the statutory exception would result in the situation where a law enforcement agency would not be permitted to request its employee-police officer to take a polygraph test once the officer received immunity from criminal prosecution, as there would be no 'ongoing criminal investigation.' However, without a grant of immunity from future criminal prosecution, a law enforcement agency would not be allowed lawfully to administer to its employee a polygraph test within the exception of G. L. c. 149, § 19B (2)."[16] *Id.* at 322-323. That would deprive police departments of their ability to order the lie detector tests of officers accused of serious misconduct violating the criminal laws of the Commonwealth, a tool that the Legislature has expressly granted them.[17]

3. *Conclusion.* The "criminal investigations" exception applies where the conduct under investigation would constitute a crime even though criminal prosecution was not possible at the time of the administration of the lie detector test. Consequently, the decision granting summary judgment to the defendants is affirmed.[18]

*So ordered.*

---

legislation"); *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co., supra* at 193-194, quoting *Devlin* v. *Commissioner of Correction,* 364 Mass. 435, 442-443 (1973) ("inaction by a subsequent legislative body 'has no persuasive significance' with reference to the intent of the Legislature which passed the original bill").

[16]See *Carney* v. *Springfield,* 403 Mass. 604, 608-609 (1988), and note 2, *supra.*

[17]We have noted that the "criminal investigations" exception may impose a requirement that the crime being investigated have some connection to the employee's job. See *Bellin* v. *Kelley,* 435 Mass. 261, 271 (2001) ("To whatever extent [if any] the statute imposes a requirement that the crime being investigated have some connection to the employee's job . . ."); *Baker* v. *Lawrence,* 379 Mass. 322, 327 & n.8 (1979) ("The situation plainly within the exception is one where the law enforcement agency is conducting an investigation into a crime alleged to have been committed by a person in connection with the duties of his employment, and the agency is permitted, i.e., not forbidden, to administer a polygraph test to that employee"). Furtado has not raised this argument on appeal, and we need not address it.

[18]The defendants' request for attorney's fees and the costs incurred on appeal is denied.