Garsh, E. SusaN, J.
The plaintiff, Michael Miller (“Miller”), filed this petition seeking certiorari review pursuant to G.L.c. 249, §4. The petition arises out of a decision by the Registry of Motor Vehicles (“RMVj to suspend Miller’s license based on his refusal to take a chemical breath test. The Wrentham District Court affirmed the RMVs determination. For the reasons set forth below, the plaintiffs motion for judgment on the pleadings[2] is ALLOWED.
BACKGROUND
The following facts are taken from the administrative record.
According to an unsigned Incident Narrative Report drafted on July 12, 2008 by Officer David Smolinksy (“Smolinsky”) of the Walpole Police Department (“■WPD”), Officer Simmons (“Simmons”) of the WPD stopped a motor vehicle operated by Miller that same evening for a marked lanes violation. The report states that Simmons detected an odor of alcohol on Miller’s breath, and that Smolinsky joined Simmons at the scene. The report continues that Smolinsky asked Miller to step out of the vehicle and to take a number of field sobriety tests, and that Miller failed each of these tests. Smolinksy also reported that he arrested Miller for operating a motor vehicle under the influence of an intoxicating liquor based on his observations and the information provided by Simmons. His report further states that he took Miller to the Walpole police station for booking where Sergeant Steven Giampa (“Giampa”) booked Miller for an OUI third offense, marked lanes violation, drinking from an open container in a motor vehicle, and drinking from an open container in violation of a town bylaw.
According to an unsigned Incident Narrative Report written by Moses on July 12, 2008, Giampa asked Moses to operate the breath test machine during booking. The report states that Moses offered Miller an alcohol breath test during booking and that Miller was read the refusal form twice by Giampa because Miller stated that he did not understand. It states further that Giampa asked Miller if he had questions and gave him time to read the form because Miller said he could not comprehend it unless he read it. It states that Moses, Giampa and Smolinsky asked Miller multiple times whether he wanted to submit to or refuse a breath test and that Miller did not answer any of these multiple offers, claiming that he needed to read it again. Moses’s report states that Miller was given a copy of the form again, that he started reading it and then kept stating that he needed time to read it. It states that Miller refused to sign the refusal rights form and that he entered Miller as a refusal into the breath test machine and gave the copies to Smolinsky to sign. The report states that Miller refused to sign these forms as well and so Moses checked off the refusal box. Finally, Moses reports that after Miller was advised that the refusal was entered, he began asking if he could take the test and was told that he had been given a reasonable amount of opportunities and that the option no longer existed.
An unsigned Incident Narrative Report written by Giampa on July 12, 2008 states that Giampa conducted the booking procedures for Miller, during which he read to Miller his rights to a breath test from the paper as Miller read along. Giampa’s report states that he asked if Miller would like to take the breath test, to which Miller responded that he would like to speak with his attorney first. Giampa states that he explained that Miller could make his phone call after the booking was complete and he again told Miller about his the right to take the breath test. Miller, according to Giampa, stated that he would like to read it on his own. The report states that Giampa then gave him the paper and Miller sat in a chair at the booking desk and began to read. According to the report, after approximately three to five minutes, Giampa asked Miller if he had any questions, to which Miller responded that he would like to read the form himself. Giampa stated that he then explained that he needed to give an answer to his decision, and that Miller kept procrastinating and stalling, stating that he needed more time. After this went on for another five minutes, he was issued a refusal as a result of his unwillingness to cooperate.
On the same date as the booking, the WPD generated a “Report of Chemical Test Refusal” (“Report of *242 Refusal”). The Report of Refusal contains information about Miller’s identity, arrest, physical symptoms of impairment, and refusal to take the breath test. In particular, the refusal section of the report states that Miller was offered a breath test, that he was advised of the consequences of refusing, and that he nonetheless refused to take the test. The refusal section of the report notably lists Moses as both the “refusal officer” and the “refusal witness.” The Report of Refusal avers that it was prepared by the refusal officer under the penalties of perjuiy. It concludes with the statements that “ [t]his report is in one of the formats approved by the Registry of Motor Vehicles pursuant to MGL c. 90, §24(l)(f)(l). Pursuant to 540 C.M.R 11.00 et seq., the Registry reserves the right to have any errors or omissions in data entry or transmission on this report corrected by the police department. By submitting this report, the department hereby agrees to furnish any and all reports and documents pertaining to this arrest to the Registry upon request.”
Moses provided Miller with a written notification of his suspension that informed him of his right to a hearing to challenge the suspension. On July 15, 2008, Miller requested and received a hearing before a RMV Hearings Officer. Miller was represented by counsel at this hearing. Miller claimed, according to his Statement of the Defendant/Witness, which was signed under the penalties of perjury, that he asked for time to read the refusal form and then he requested a breath test but was told that it was too late. He also stated that, after being permitted to speak to his attorney, he again requested to take the breath test and again was not allowed to do so.
Following Miller’s hearing and prior to the issuance of the decision,[3] the Hearings Officer wrote to Moses informing him that Miller and his counsel had appeared before her for a refusal hearing and that she was unable to conduct the hearing due to an “error” on the Report of Refusal which “shows that the witness Officer and the refusal Officer are the same person.” She requested that Moses “provide [her] with a supplemental report detailing the Officer present, most importantly the Witness to the Defendant[’]s Refusal and any additional documents.”
Moses, however, did not provide the Hearings Officer with an amended report or a supplemental Report of Chemical Test Refusal. Instead, he submitted an unsigned Incident Narrative Report printed and written on August 1, 2008.[4] This report stated that Moses had operated the breath test machine on the evening of July 12, 2008, and that Giampa, Simmons, and Smolinsky were present and witnessed Miller’s refusal. Unlike the Report of Refusal, the Incident Narrative Report did not state that it was made by the refusal officer “under the penalties of perjury.”
On August 6, 2008, the Hearings Officer denied Miller’s request for his license to be reinstated. In her Chemical Test Refusal Hearing Report (“Hearing Report”), the Hearings Officer asserted that she had examined the Report of Refusal supplied by the WPD and found that it met the statutory requirements of G.L.c. 90, §24(l)(f)(l) and, thus, in order for the RMV to reverse the suspension, Miller had the burden to show that the police did not have reasonable grounds to believe that he had been operating a motor vehicle while under the influence of intoxicating liquor, that the police had not placed him under arrest, or that he had not refused to submit to a breath test.
The Hearings Officer went on to find that Miller did not meet his burden of proof with respect to any of these issues. As for refusal, the Hearings Officer found as follows:
Did the defendant refuse to submit to a Chemical Test?
Yes, the Defendant did refuse to take the Breathalyzer test upon having been placed under arrest for operating under the influence of liquor. The Report of Refusal, at pages 7-9, clearly states that the Breathalyzer Refusal was recorded by Ptl. Moses and witnessed by Sgt. Giampa on 7/12/08 pursuant to MGL 90 §24(1)(f)(1).[5] The Police Report further notes the Refusal was witnessed by Ptl. Simmons and Ptl. Smolinsky. It should also be noted that during the booking process Mr. Miller was uncooperative and refused to follow instructions or sign the Statutory Rights and Consent Form. Therefore the Officer noted uncooperative in place of the Defendant[’]s signature due his to [sic] behavior. The refusal noted by the Walpole Police was correct. . .
The Hearings Officer accordingly upheld Miller’s suspension.
DISCUSSION
Miller appealed the RMV’s decision to the Wrentham District Court in accordance with G.L.c. 90, §24(l)(g). After that court affirmed the RMV’s determination, this certiorari petition followed. A civil action in the nature of a certiorari is available “to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal.” G.L.c. 249, §4.
Certiorari enables a court to “correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff... In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public." Massachusetts Bay Transportation Authority v. Auditor of the Commonwealth, 430 Mass. 783, 790 (2000), quoting Carney v. Springfield, 403 Mass. 604, 605 (1988).
General Laws chapter 90, section 24(l)(f)(l) provides that “[w]hoever operates a motor vehicle upon any way or in any place to which the public has right *243 to access . . . shall be deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor . . .” The statute states that if an arrested operator refuses to submit to such a test or analysis after being informed that refusal will result in the suspension of his license to operate a motor vehicle for at least 180 days and up to a lifetime, then no test or analysis shall be made and the operator’s license shall be suspended.
The same section of the statute requires the creation of a Report of Refusal and controls the contents and legal effect of that report. It provides, as follows:
The police officer before whom such refusal was made shall, within 24 hours, prepare a report of such refusal. Each report shall be made in a format approved by the registrar and shall be made under the penalties of perjury by the police officer before whom such refusal was made. Each report shall set forth the grounds for the officer’s belief that the person arrested had been operating a motor vehicle on a way or place while under the influence of intoxicating liquor, and shall state that such person had refused to submit to a chemical test or analysis when requested by the officer to do so, such refusal having been witnessed by another person other than the defendant. Each report shall identify the police officer who requested the chemical test or analysis and the other person witnessing the refusal. Each report shall be sent forthwith to the registrar along with a copy of the notice of intent to suspend in a form, including electronic or otherwise, that the registrar deems appropriate . . . The report shall constitute prima facie evidence of the facts set forth therein at any administrative hearing regarding the suspension specified in this section.
(Emphasis added.)
Section 24(l)(g) of chapter 90 entitles the operator to request a hearing before the RMV within fifteen days of the suspension of his license. The hearing officer is required to compile a record of the proceedings for purposes of judicial review, and the scope of the hearing is limited to the following factual issues: “(i) did the police officer have reasonable grounds to believe that such person had been operating a motor vehicle while under the influence of intoxicating liquor . . . , (ii) was such person placed under arrest, and (iii) did such person refuse to submit to such test or analysis.” Id. If the RMV answers any of these questions in the negative, then it must immediately reinstate the operator’s license. Id.
The RMV has promulgated regulations to establish procedures for hearings held by the RMV pursuant to G.L.c. 90, §24(1)(g). See 540 C.M.R. 11.02(5). These regulations require the hearings officer first to “examine the Report of Refusal forwarded to the Registry pursuant to the provisions of M.G.L.c. 90, §24(1)(i)(1) to determine if it meets the requirements of said statute.” 540 C.M.R. 11.02(5)(a). Where an electronic submission of this report may be incomplete or not received, the Registry has a reasonable period of time “to obtain said report.” The burden does not shift to the operator and the Hearings Officer does not make findings on the three statutory questions unless it has a report that complies with all the statutory requirements. “If after examining the Report of Refusal, the hearings officer determines the requirements are not met, the hearings officer shall forthwith reinstate the operator’s license ... if previously suspended by the Registrar ...” Id.
Only “(i]f the hearings officer determines the Report of Refusal meets the statutory requirements” does the operator bear the burden to show that one of the three factual issues set forth in G.L.c. 90, §24(l)(g) was in the negative. 540 C.M.R. 11.02(5)(b). Consistent with the statute according prima facie effect to a Report of Refusal, this regulation unequivocally places the burden on the operator to demonstrate that one of the three questions set forth in G.L.c. 90, §24(l)(g) should be answered in the negative if and only if the Report of Refusal meets the requirements of section 24{l)(f)(l).
General Laws chapter 90, section 24(1) (g) also provides that a person whose suspension is upheld may file a petition for judicial review in the district court. Judicial review is on the record established at the hearing before the RMV. If the court finds that the RMV exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination that is unsupported by the evidence in the record, the court may reverse the registrar’s determination. Id.
In the present case, the Hearings Officer’s determination that the Report of Refusal met the statutory requirements of G.L.c. 90, §24(l)(f)(l) constituted a substantial error of law that resulted in manifest injustice to Miller. According to the governing statute, the Report of Refusal must identify the police officer who requested the chemical test or analysis as well as “the other person witnessing the refusal” and the report must be made under the penalties of perjury by the police officer before whom such refusal was made. The Report of Refusal forwarded to the RMV was prepared under the penalties of perjury, but it failed to identify the refusal witness. As such, it did not comply with the statute, and the Hearings Officer had no authority to consider the Report of Refusal to be prima facie evidence of refusal and no authority to shift the burden to Miller to show that he had not refused. The Hearings Officer at no time received a report that identified, under penalties of perjury, any other person who witnessed Miller’s refusal. In the absence of such a report, the Hearings Officer was *244 required to “forthwith reinstate the operator’s license.” 540 C.M.R. 11.02(5)(a).
The procedures outlined in 540 C.M.R. 11.02(5)(a) are consistent with the plain language of the statute. The regulations provide no authority for the Hearings Officer’s conclusion that the Report of Refusal, combined with the unsigned and unsworn incident report or reports, met the statutory requirements of G.L.c. 90, §24(l)(f)(l). In accordance with those regulations, the Hearings Officer did examine the Report of Refusal forwarded to the RMV to determine if it met the requirements of said statute and, as was within her authority when faced with an apparent error and thus an incomplete report, she requested a “supplemental report” identifying the witness to the defendant’s refusal. Her error was not in requesting a supplemental report but in deeming what she received to have remedied the error. Although a police officer may supplement his initial Report of Refusal, as permitted by 540 C.M.R 11.02(5) (a), any additional report supplying information that the statute requires be made under the penalties of perjury must also be made under the penalties of perjury for the report to comply with the statute.
The RMV’s characterization before this court of the listing of Moses on the Report of Refusal as both the refusal officer and the refusal witness as a “scribner [sic] error” does mean that the Hearings Officer had the right to shift the burden to the operator when faced with a deficient report. It was to correct the apparent scrivener’s error that the Hearings Officer appropriately requested a supplemental report. That report never arrived.
It is immaterial that, in different contexts, police reports not made under the penalties of perjury may be admissible and sufficiently reliable to form the basis of agency and other actions. See, e.g., Commonwealth v. Durling, 407 Mass. 108, 120-22 (1990) (probation revocation hearings). But see Merisme v. Board of Appeals on Motor Vehicle Liiblity Polices & Bonds, 27 Mass.App.Ct. 470, 476 (1989) (holding that board’s upholding of surcharge on basis of a police accident report was not supported by substantial evidence and therefore was a denial of substantial justice). The unequivocal language of G.L.c. 90, §24(1)(f)(1) requires that the breath test refusal witness be identified under the penalties of perjury. Whether the Hearings Officer was entitled to have relied on unsworn, unsigned police reports once the burden properly shifted to the operator is not at issue in this case. The burden never properly shifted to the operator because there never was a Report of Refusal that met the requirements of section 24(l)(f)(l).
In sum, the Hearings Officer substantially erred in a way that materially affected the rights of the parties resulting in manifest injustice to the plaintiff and the District Court similarly erred.
ORDER
For the foregoing reasons, it is hereby ORDERED that Michael Miller’s Motion for Motion for Judgment on the Pleadings be and hereby is ALLOWED, that the decision of the Wrentham District Court be and hereby is VACATED, that the decision of the Registry of Motor Vehicles to suspend Michael Miller’s license be and hereby is VACATED, and that Michael Miller’s license be reinstated forthwith by the Registry of Motor Vehicles.

Miller’s Motion for Summary Judgment is deemed to be a Motion for Judgment on the Pleadings. See Drayton v. Commissioner of Corrections, 52 Mass.App.Ct. 135, 136 n.4 (2001) (proper vehicle for resolution of a petition for judicial review brought pursuant to G.L.c. 249, §4 is by way of judgment on the pleadings).

The purported date of the letter, July 11, 2009, obviously is inaccurate. Miller was not arrested until July 12, 2008. At the motion hearing, the parties agreed that the Hearings Officer actually sent this letter to Moses some time after the hearing, which was held on July 15, 2008.

Moses also submitted an unsigned Incident Narrative Report printed on August 1, 2008 that was drafted by Smolinsky on July 12, 2008. Smolinsky’s report stated that Miller was uncooperative during the booking process and did not follow directions, but did not specifically allude to Miller’s refusal to take a breath test.

The Hearings Officer appears to be referring to Moses’s Incident Narrative Report dated August 1, 2008 and to his and Giampa’s Incident Reports dated July 12, 2008 because the Report of Refusal does not contain the information that Giampa witnessed the refusal.